## UNITED STATES *v.* TERRY *et al.*

### (*District Court, N. D. California.* May 24, 1889.)

**1. INDICTMENT AND INFORMATION—PLEA IN ABATEMENT—DEMURRER.**
Where a plea in abatement to an indictment alleges facts contrary to the record, or which could be proven only by the testimony of the grand jurors disclosing their proceedings or impeaching their findings, a demurrer to the plea cannot be regarded as admitting the truth of such allegations, but will be considered as an objection or exception to the filing or allowance of the plea.

**2. SAME—IMPEACHING RECORD BY PLEA.**
Such allegations cannot properly be inquired into by plea in abatement, but the inquiry must be addressed to the discretion of the court, by suggestion or motion. and it will be allowed only in rare and extraordinary cases, where the matters, if true, work a manifest and substantial injury to the defendant.

**3. SAME—CONDUCT OF GRAND JURY—OMISSION TO READ INDICTMENT.**
The fact that after a large number of witnesses had been examined by the grand jury, and the district attorney had been instructed to prepare indictments against defendants, the jury dispensed with the reading of the indictments, and returned them into court without knowing their exact contents, because of the statement made to them by the attorney that it would take three hours to read them, and that the supreme court justice wanted to leave, and wanted the indictments found before he left, affords no ground for setting aside the indictments.

**4. SAME—PRESENCE OF DISTRICT ATTORNEY IN JURY ROOM.**
In the United States district court, the mere fact that the district attorney was present during the expression of opinion of the grand jury upon the charge in the indictment. and during their voting thereon, is at most an irregularity, which, in the absence of averment of injury or prejudice to defendant, is a matter of form, and not of substance.

**5. SAME—REFUSAL TO SUBPŒNA WITNESSES FOR ACCUSED.**
In the United States district court, the mere refusal of the district attorney to summon witnesses for the accused at the request of the grand jury furnishes no ground for setting aside the indictment.

Indictments against D. S. Terry for an assault with a deadly weapon; attempting to obstruct justice; obstructing United States marshal; and displaying deadly weapon in a threatening manner. Also against Sarah A. Terry for attempting to obstruct justice and obstructing United States marshal. On demurrer to plea in abatement.

HOFFMAN, J. The first four articles of the plea were abandoned at the hearing. It is urged in support of the remaining articles that the matters therein set up show, if true, that the indictment was not legally found by the grand jury, and that the suit must therefore abate. It is further urged that the demurrer admits, for the purpose of this argument, the truth of the matters so alleged.

The district attorney contends—*First*, that the plea alleges matters contrary to the record, and, therefore, that the truth of those matters cannot be inquired into; and, *second*, that the inquiry can from its own nature be made only by taking the testimony of the grand jurors, who by law and the terms of their oaths are forbidden to disclose their proceedings or to impeach their finding. It would seem that the more regular course would have been to object to the allowance of the plea. The court would have ruled it out as a formal plea in abatement, for a plea

of that character is bad so far as it contradicts the record. At common law the regular answer would be that the indictment was duly returned by a grand jury *prout patet per recordum*, and this must be tried by an inspection of the record itself. *Countess of Rutland's Case*, 6 Coke, 53; 3 Bl. Comm. 331; 1 Bish. Crim. Proc. § 885, and cases cited; *State* v. *Hamlin*, 47 Conn. 116; *Com.* v. *Smith*, 9 Mass. 110. So, also, if the allegations of the plea cannot be proved except by the testimony of the grand jurors themselves. *State* v. *Hamlin, ubi supra*. The demurrer, therefore, in this case can only be allowed to operate as an objection or exception to the filing or allowance of the plea. It cannot be taken as an admission of the truth of the allegations pleaded. No such admission was intended by the district attorney, nor had he authority to make it. These observations may seem to savor of technicality. They will be found, however, to be not without importance to the final decision of the questions argued at the hearing. Assuming, however, that the plea in the case is open to exception as a formal plea in abatement, it does not follow that the defendant is without remedy. Thus, for example, where it is alleged that there has been improper conduct on the part of officers employed in the designating, summoning, and returning of the grand jury, the defendant, who may have been prejudiced thereby, may bring the matter before the court by suggestions or motion or affidavit, even where no right of challenge to the array is allowed by law. But this motion is addressed to the discretion of the court, and the court, having general power to preserve the pure administration of justice, will freely exercise its sound discretion for the purpose of serving that end. Per NELSON, J., *U. S.* v. *Reed*, 2 Blatchf. 449. To the attainment of this great object for which courts are established, general rules or doctrines must in some cases give way; but exceptions to their application must be admitted with extreme caution, and on the clearest ground of their necessity, to secure substantial, and not merely technical, rights. Thus it is the policy of the law that the preliminary inquiry by a grand jury as to the guilt or innocence of the accused party should be secretly conducted; and in furtherance of this object the juror is sworn to secrecy; and yet, in cases of alleged perjury, or to impeach or contradict a witness in a criminal, or, perhaps, in a civil, case, the grand juror may disclose the testimony given before the jury. So, again, the general rule that the admissibility and sufficiency of the evidence on which an indictment has been found cannot be inquired into, is unquestionable. Yet if, for example, it should appear from the indorsement on the back of the indictment that only one witness was examined, and it should be shown that he was a convicted felon and, therefore, incompetent to be a witness in any case, I presume that the indictment would be quashed. It has also been held that in extreme cases, "when the court can see that the finding of a grand jury is based upon such utterly insufficient evidence or such palpably incompetent evidence as to indicate that the indictment resulted from prejudice, or was found in willful disregard of the rights of the accused," it will interfere and quash the indictment. *U. S.* v. *Farrington*, 5 Fed. Rep. 343. On the other hand, many au-

thorities can be cited to show that the court will under no circumstances inquire into the character of the evidence on which the indictment was found, the presentment of the indictment, duly indorsed, being held conclusive of the regularity of the proceedings. Whether an objection that the bill was found by a less number than 12 will be entertained was said by Mr. Justice NELSON to be doubtful under the authorities.

It is evident that the inquiry thus raised is open to technical objections: *First.* That it would require the juror to reveal his own vote and that of his fellows. *Second.* It would contradict the record which shows that the indictment was "a true bill," *i. e.*, found by the requisite number of jurors. *U. S.* v. *Reed,* 2 Blatchf. 435–466; *U. S.* v. *Brown,* 1 Sawy. 531; *People* v. *Hulbut,* 4 Denio, 133; *State* v. *Boyd,* 2 Hill, (S. C.) 288; *State* v. *Fowler,* 52 Iowa, 103, 2 N. W. Rep. 983; *Stewart* v. *State,* 24 Ind. 142; *Creek* v. *State,* Id. 151; *State* v. *Fasset,* 16 Conn. 467. But it has been held that the testimony of grand jurors may be received to show that under a misapprehension of the law the indictment was found on a majority vote of the jury, and without the concurrence of 12 of the number, and that therefore it was void, and no true bill; and, secondly, that the court, while recognizing the absolute verity which a regular judicial record imports, and the policy on which the rule is founded, yet holds that there always has been and always must be from the necessities of the case a power in the court to vacate or cause to be amended a record which has been erroneously or falsely made, by inadvertency or otherwise, by any of its officers; and that it is competent for it to say, if the claims of justice require it: "This is not our record; it is false and erroneous, and the authentication it bears is unauthorized and unwarranted." *Low's Case,* 4 Greenl. 444, 445; Hawk. P. C. bk. 2, c. 25, § 15; *Com.* v. *Smith,* 9 Mass. 107. Professor Greenleaf adds the great weight of his authority to the doctrine announced in these cases, but he is careful to limit his statement to the points actually decided, viz., "that grand jurors may be asked whether twelve of their number actually concurred in the finding of a bill, the certificate of the foreman not being conclusive evidence of that fact." 1 Greenl. Ev. § 252. Assuming this statement of the law to be correct, we perceive that it introduces exceptions to well-settled and fundamental rules which the courts uniformly declare to be salutary, and in general indispensable to the administration of justice. It is not surprising that the courts have in many instances refused to sanction so great a departure from established rules, and that the question should still, as observed by Mr. Justice NELSON, be doubtful. In *Low's Case,* the court seems to be fully alive to the danger of allowing the exception contended for. "It may be said," observes the court, "that to permit an inquiry of this sort would open the door to great abuses; that it would afford opportunity to tamper with the jury; and that it would lessen the respect due to the forms and solemnities of judicial proceedings. These are considerations which address themselves strongly to the attention of the court. * * * It could only be in a very clear case, where it could be made to appear manifestly and beyond every reasonable doubt that an indictment apparently legal and formal had not in

fact the sanctions which the law and the constitution require, that the court would sustain a motion to quash or dismiss it upon a suggestion of this kind."

From the foregoing it results: *First.* That matters which contradict the record, or which are, if true, only provable by testimony of the jurors, who must be permitted to disclose what the terms of their oath and the general rules of law require of them to keep secret, and the effect of which is to impeach their verdict, cannot be set up in a formal plea in abatement. *Second.* If they can be inquired into at all it must be on a suggestion or motion addressed to the discretion of the court; that an exception to the general rules of law, which forbid a record to be contradicted, or a grand juror to disclose the proceedings of the jury, or to impeach its findings, will only be allowed in rare and extraordinary cases, and where the matters, if true, worked a manifest and substantial injury to the defendant, which the court, in the interest of justice, is bound to redress; that the facts contradicting the record must be "made out to the entire satisfaction of the court so as to leave no doubt on the subject," (Per PREBLE, J., *Low's Case,* 4 Greenl. 453;) that the facts, if true, must present a case, not of technical, or possible, or hypothetical, but of manifest and undeniable, wrong to the defendant, such as putting him to trial on an indictment not found by 12 jurors, and which is therefore no indictment, but an accusation, made by an unauthorized body of men.

Treating, then, the allegations of the plea as suggestions made to the court on an application addressed to its discretion or its authority to remedy abuses by its officers which would work a manifest and substantial wrong to the defendant, I proceed to consider those allegations which were relied on at the hearing. The fourth article of the plea alleges, in substance, that the indictment was not found or concurred in by 12 of the grand jurors. The facts on which this averment is made are stated in the succeeding article. Article 5 alleges that "the indictment was wrongfully and fraudulently brought into and presented to the court, because, as defendant is informed and believes, the said indictment was never read to the grand jury, or its contents made known to them, or any of them; that four charges were under consideration by the grand jury; that four indictments in form were prepared by the district attorney, which were brought by him into the grand jury room; and that he then and there told the grand jury that they should hurry up with those indictments against defendant, because Judge FIELD wanted to leave, and wanted them found before he left; that thereupon the grand jury asked the district attorney how long it would take to read the indictments against the defendants, and he replied, 'About three hours;' and thereupon the said grand jury, in the presence of the said district attorney, agreed together to dispense with the reading of said indictments, including the indictment in this action, and to present the same to the court without reading or hearing read any of said indictments, or any part of either one of said indictments, and all and each of said indictments were thereafter returned into and presented to the court by the

said grand jury without ever having been read by or to said supposed grand jury, or any member thereof; and that prior to the presenting and filing of said indictments the said grand jury never knew and had no knowledge of the contents of the indictments in this action, and never knew what crime or offense, if any, was charged therein against this defendant." It is upon the facts stated in this narrative of what took place in the grand jury room that the defendant relies to justify the averment that the indictment "was wrongfully and fraudulently presented to the court" by the grand jury, and that the grand jury "never knew what crime or offense, if any, was charged therein against said defendant." It is not averred in the plea that the alleged communication to the grand jury of Mr. Justice FIELD's wishes induced them to find an indictment against the defendant, which would not otherwise have been found. Such an impeachment of their intelligence, their integrity, and their independence, the pleader has not ventured to make. Supposing, however, the communication of Mr. Justice FIELD's wishes to have been actually made to and believed by the jury, the most that can be said is that by possibility it might have influenced them. To set aside an indictment because the jury are informed that one or more persons eminent for their official position or their social standing, or that a considerable number of their fellow-citizens or of the public journals, desire an indictment to be found, would be to adopt a rule which would in very many cases prevent the finding of any indictment whatever. But the averments in the plea present no such case. All that can be gathered or inferred from them is that the grand jury were induced by the alleged wishes of Mr. Justice FIELD and the statement by the district attorney that it would take three hours to read the indictments, to dispense with the reading of them. The usual, and, I believe, invariable, method of procedure in cases submitted to grand juries in this court must, in the absence of any averment or suggestions to the contrary, be presumed to have been followed. The district attorney informs the grand jury of the nature of the charge, and calls their attention to the provisions of the statutes supposed to have been violated. The witnesses are then produced and examined, and it is only when the jury is satisfied that the offense has been committed by the accused that the district attorney is directed to prepare the formal indictment. This case was, therefore, passed upon, and the bill substantially, though not technically and formally, found, before the alleged communication to the grand jury of the alleged wishes of Mr. Justice FIELD was made to them. The jury, saw fit to dispense with the reading of the indictments, relying, as they had a right to do, that the district attorney had, in framing the bills obeyed their directions. No imputation is cast, either by averment or suggestion, at the bar upon the fairness, high sense of duty, or capacity of that officer. Neither the intelligence nor the integrity of the jury is impeached except by the use of the word "fraudulent" (probably through inadvertence) with respect to the presentment of the indictment to the court. The indictment shows that no less than 17 witnesses were examined by the jury. It decided on their testimony to sustain the charge,

and directed the indictment to be prepared. When the indictment was brought in to them, the nature of the offense charged was apparent from the indorsement upon it. They might not have known what was alleged in all the counts, but how can it be said that "they never knew what crime or offense, if any, was charged therein against the defendant?" No case has been cited, nor can any, I believe, be found, where the court, on a state of facts like this, has allowed a record to be contradicted by the evidence of grand jurors impeaching their own finding; and this on an application addressed to the discretion of the court, which must be "satisfied beyond a reasonable doubt" that a legal or constitutional right has been violated, and that manifest injustice and injury to the defendant have been done. If an indictment, duly presented to the court with the concurrence or acquiescence of the grand jury, can be set aside on the testimony of one or more of them that he was ignorant of its contents (or of the particular allegations in one or more of the counts) because it was not read to him,—not that he demanded its reading and it was refused, but that he with his fellows dispensed with the reading, or that, if read, he, through illness, weariness, preoccupation, or other causes, did not hear or understand its contents, and that, if he had, he would not have concurred in finding it, or some of the counts contained in it,—every indictment would be at the mercy of grand jurors who might be willing or be induced to give such testimony.

The testimony of even trial jurors, whose verdicts, if adverse, are convictions, and not merely accusations, is not received to impeach their verdict.

Upon grounds of public policy the courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict. Thomp. & M. Juries, § 440. For this familiar rule a great number of cases are cited by the learned authors. Thus it is not admissible to show by the oath of a juror that he did not agree to the verdict as rendered, or that he consented to the return of it without concurring in it, in order to secure his discharge, or because his health required him to be released from confinement. Nor will such testimony be received to show that the jury did not in fact agree upon the verdict, or that the verdict rendered was not in fact the verdict of particular jurors, or that the verdict was by mistake returned as the verdict of the whole jury, when some of them in fact were in favor of finding it for the other party, or that they misunderstood the charge of the court or the result of the finding, or that they agreed upon the verdict by average or by lot. Id. §§ 440–442, and cases cited. And it is observed by the authors of the work just cited that "the last thing that a court will listen to is an affidavit of a juror contradicting the verdict which he has solemnly rendered in open court under the obligation of his oath as a juror. If he does not agree to the verdict when it is announced in court, he must speak then, or afterwards hold his peace." Id. p. 542, in note.

The sixth article alleges that "the district attorney was present during the expression of opinion of the grand jury upon the charge made in said

indictment, and during the expression of their opinions and the giving of the votes thereon." It is not alleged or suggested that the district attorney exercised, or attempted to exercise, any influence upon the grand jury to induce them to find a bill. Whether he was present when the jury voted that he should be instructed to prepare a bill, or afterwards, when the bill was presented to them and voted on, or on both occasions, does not distinctly appear.

It seems that in England it is not unusual for the public prosecutor to remain with the grand jury while they are deliberating upon or deciding any question of finding a bill. 1 Chit. Crim. Law, 317. The district attorney was necessarily present at the expression of their opinion, when they instructed him to prepare the indictment.

Section 925 of the Penal Code of this state provides that no person must be permitted to be present during the expression of their (the grand jurors') opinions or giving their votes upon any matter before them, and, if so present during the session of the grand jury, and when the charge embraced in the indictment is under consideration, the indictment must be set aside. This language would include the case of a porter or servant called in to make a fire or light the gas, whose presence could have had no conceivable influence on the action of the jury. If, as in this case, the unauthorized person whose presence is supposed to vitiate the indictment be the district attorney, that consequence must flow as a conclusive legal presumption that the grand jurors have been so weak and so unmindful of their duty as to have been induced by the mere presence of the district attorney to find a bill which they would or might otherwise have ignored. A presumption so derogatory to the character and intelligence of the jury, no court, unless compelled by positive statute, should entertain. The provisions of the Penal Code of California are not binding on the federal tribunals, and they can have, but little force as a rule necessary in the opinion of the legislature for the protection of the accused, when the state law allows any person charged with crime, even the highest, to be brought to trial on an information filed and subscribed by the district attorney without the intervention of a grand jury. Pen. Code Cal. § 809. The United States Statutes contain no such provision. The mere presence of the district attorney when the voting takes place is at most an irregularity, which, when there is no proof or averment of injury or prejudice of the defendant, is a matter of form, and not of substance, within the scope of § 1025, Rev. St. U. S. *U. S.* v. *Tuska,* 14 Blatchf. 5; *U. S.* v. *Ambrose,* 3 Fed. Rep. 283.

The seventh and eighth articles allege that the grand jury, though requested, refused to hear certain witnesses for the defendant. It is enough to say that an accused person has no right to appear in person or by counsel before the grand jury, or to have witnesses in his behalf produced and examined.

The only portion of the ninth article necessary to be considered is the allegation that the grand jury requested the district attorney to subpœna certain witnesses in behalf of the defense, which the district attorney refused to do, and instructed the grand jury that no witnesses for the de-

fense should be subpœnaed, called, or heard before the said grand jury, and that such were the instructions of the judges in bank, and that he refused on the same ground a similar request made to him by the defendant's attorney. The district attorney was clearly right if he merely informed the grand jurors that, as a general rule, the defendant had no right to produce witnesses in his defense, nor had they any right to hear them; in other words, that the proceedings were *ex parte*, and not a trial of the case, the general rule being that the grand jury are to hear evidence only in support of the charge, and not in exculpation of the defendant. Hale, P. C. 157; 2 Hawk. P. C. c. 25, § 145, note; Add. (Pa.) appendix, 38; *Lino's Case*, 1 Conn. 428; *Respublica* v. *Shaffer*, 1 Dall. 255; *U. S.* v. *Palmer*, 2 Cranch, C. C. 11; *U. S.* v. *Blodgett*, 35 Ga. 336. In the last case ERSKINE, J., observes:

"To allow evidence, either oral or written, to go before the grand inquest on behalf of a defendant would be subversive of the ancient and well-settled rules of courts of justice."

The policy of this rule has been explained and vindicated with great force by ADDISON, J., (Add. Pa., *ubi supra*,) and by McKEAN, C. J., in *Respublica* v. *Shaffer*, 1 Dall. 236. But its seeming hardness has led to some qualification of it. Thus the right to send witnesses for the defense to the grand jury with the consent of the prosecuting attorney, but not without it, appears to be recognized by that great judge, Mr. Justice WASHINGTON, in *U. S.* v. *White*, 2 Wash. C. C. 29, 30. On this point Mr. Chitty observes that "*prima facie* the grand jury have no concern with any testimony but that which is regularly offered to them with the bill of indictment; * * * their duty being merely to inquire whether there be sufficient ground for putting the accused party on his trial before another jury of a different description. But, if they are unable to satisfy themselves of the truth sufficiently to warrant their determination, they may properly seek other information relative to mere facts, but further than this they cannot proceed." 1 Chit. Crim. Law, 318. In accordance with this view Mr. Justice FIELD charged a grand jury of the circuit court as follows:

"You will receive all the evidence presented which may throw light upon the matter under consideration, whether it tend to establish the innocence or the guilt of the accused. And more: If in the course of your inquiries you have reason to believe that there is other evidence not presented to you within your reach, which would qualify or explain away the charge under investigation, it will be your duty to order such evidence to be produced." 2 Sawy. 670.

Legislative provisions substantially similar to the instructions given by Mr. Justice FIELD in the last sentence of his charge have been adopted in California, New York, and several other states. The diligence of the district attorney has failed to find any judicial decision in which the construction, application, and effect of these statutes have been construed. Whether the order to the district attorney to produce further testimony is to be made by the unanimous vote of the jury or by a majority of those investigating the charge, or by at least 12 of the body; whether their

belief that further evidence would qualify or explain away the charge is to be founded exclusively on a consideration of the evidence already produced, or upon suggestions of outside parties; whether the bare refusal of the district attorney to obey the orders of the grand jury will *per se,* and without giving him an opportunity to explain his reasons therefor or the circumstances of the case, vitiate the indictment,—are questions upon which judicial decisions throw no light. It is to be observed, however, that neither in California nor in any of the states that have adopted this rule has such refusal been declared a statutory ground for setting aside the indictment. No adjudged case has been cited in any federal court where this relaxation or modification of the common-law rule has been recognized or adopted. That its adoption might lead to serious evils is apparent. The grand jury is necessarily left to be the sole judges whether there is "reason to believe that other evidence not presented would qualify or explain away the charge." If testimony contradictory or in rebuttal of the evidence before them is to be received, the district attorney must be at liberty to show that the witnesses produced are from their general reputation unworthy of belief, or that they have given a different account of the circumstances to which they testify; or, by proving an *alibi,* to show that they could not have been present at the occurrences to which they testify. This evidence the defendant should in turn have the right to rebut, and thus the grand jury would practically enter upon the trial of the case,—a proceeding "subversive of the ancient and well-settled rules of the courts of justice." If the doctrine that it is the right and duty of grand juries to hear, without the consent of the prosecuting attorney, witnesses for the defense shall be incorporated into the federal jurisprudence in criminal cases, it must, I think, be restricted in its application to cases where the evidence already produced fails "to satisfy the jury of the truth sufficiently to warrant their determination," (Chit. Crim. Law, *ubi supra,*) and where from that evidence they believe that other testimony is attainable, not to rebut and disprove the evidence already adduced, but, consistently with the substantial truth of the latter, will explain away or qualify the charge. Such, I think, is the true construction to be given to the language of Mr. Justice FIELD and to have been his meaning in giving his instructions. If the district attorney in the case supposed declines to summon the witnesses, the jury may apply to the court, or, if they are led to believe that such application would be useless, they may refuse to find the indictment. But, if they find and duly present the bill to the court, that fact shows that (unless they have violated their duty and their oaths) the evidence before them has been sufficient to satisfy them of the truth of the charge, and that the case in which they would be entitled to call for further evidence has not arisen. Certainly, in the absence of all judicial authority and precedent, I shall not be the first to go beyond the provisions of any of the Penal Codes of the states which have adopted the rule under consideration by deciding that the mere refusal of the district attorney to summon witnesses for the defense at the request of the grand jury is a good ground for setting aside the indictment.

On the whole case it may, I think, be justly said that while the rigorous and apparently harsh, though ancient and well-settled, rules of the common law have in some instances been departed from, it has always been in the interest of substantial justice, and to prevent a manifest wrong to the defendant; and, conversely, where it is plain that substantial justice will not be promoted, nor a manifest wrong to the defendant prevented, the indictment should not be set aside on grounds of technical errors, informalities, or irregularities. Such I believe to have been the intention of congress in enacting section 1025 of the Revised Statutes.

### NOTE BY THE COURT.

In his chapter relating to the proceedings of grand juries, Mr. Bishop observes: "We come now to a class of questions which are not surpassed by any other in point of practical difficulty. The authorities appear at the first impression to be almost as conflicting as the cases are numerous, and, when we seek to reconcile or to choose between them by a recurrence to the principles of law, we find it difficult to say that, in a matter of mere practice, principle points in one direction rather than in another."

The difficulties here alluded to illustrate the perpetually recurring conflict between the conservatism or inflexible opposition to change with which our profession is often reproached, and the spirit which regards "innovation" as equivalent to "reform," and "change" synonymous with "progress." This conflict of opinion is greatly a matter of personal temperament, and while, on the one hand, obstinate conservatism may lead to a bigoted adherence to rules because they are ancient, the opposite spirit may lead to crude legislation, and sometimes to hasty decisions, where judges, impressed with the hardness of particular cases, are led to violate ancient, and on the whole beneficial, rules. The history of the evolution of jurisprudence in England and in this country is replete with instances of the stubborn opposition with which reforms in law, even the most salutary, or modifications of ancient rules, the most indispensable, have been resisted by eminent members of the profession. On the other hand, the legislation of our states, and sometimes, perhaps, the decisions of the courts, disclose a rash and equally dangerous spirit of innovation. Of the former class may be mentioned the opposition made to the legal reforms introduced at various times by Lord Brougham and others into the legislation of England; the long contest between the courts of equity and the common law, resulting in the triumph of the former, respecting the true nature of a mortgage, and the rights of the mortgagor and the mortgagee; the resistance with which the introduction into the jurisprudence of England of the rules of the *lex mercatoria*, or the customs of merchants, encountered at the hands of the more bigoted disciples of the common law.

On the other hand, the statutory innovations upon 'the ancient rules respecting indictments and proceedings of grand juries have been in some cases crude, and productive of evil results. The provisions of our own statute, already noticed, which declare that an indictment shall be set aside if the district attorney is present when the vote upon it is taken, while the same law provides that he may bring to trial any person who has been held to answer by a committing magistrate, upon an information filed by himself without the intervention of a grand jury, present an illustration of the contradictory, if not absurd, legislation, which has sometimes been adopted. The rule, too, under which a grand jury may, after indictment found, be examined upon *voir dire* as to their qualifications, bias, etc., by an accused person, who had not previously been held to answer, introduces a novelty in practice leading to delays and obstructions to the administration of justice, and which seems anomalous when we consider that, by the law of the country from which we derive that venerable institution, the grand jury might find a bill upon the knowledge of one or more of its number. The obstinacy with which ancient rules have been adhered to in the construction of indictments, presents, on the other hand, an instance of the stubborn adherence of judges and courts to precedents which have lost, if they ever possessed, any claim to adoption as practical rules in the administration of justice. Thus, if one be accused of the larceny of a horse, and it is alleged to have been a black horse, if the proof shows it to be a gray horse the variance is fatal. Yet the pleader may allege in several counts, where only one offense has been committed, several larcenies of a black or gray or brown horse, and the indictment is good; and this, though the theory of the indictment is to give to the prisoner accurate and precise information of the crime with which he is charged. So it is fatal to an indictment if time and place be not alleged for every material averment, and yet when so alleged the prosecution is not obliged to prove the time as laid, but may prove the offense to have been committed at any time within the statute of limitations, and prior to the finding of the indictment. So, too, if an averment in an indictment is in the alternative or disjunctive, and the word "or" is used instead of "and," the defect

is fatal, and yet in different counts he may vary the terms of the charge, producing the same result as if in the original averment he had been allowed to make the charge in the alternative. These rules, which the courts do not feel themselves at liberty to depart from, seem to savor of scholastic subtlety and over-refinement. They probably owe their origin to a revolt of the humanity and sense of justice of the courts against the barbarism of a Draconian code, upon nearly every page of which the scaffold could be seen, and which punished with the highest penalties of the law trivial, and almost venial, offenses. There seems to be now no reason, when such cruel laws no longer prevail, either in England or this country, that these ancient precedents should be adhered to. What is the true *via media* between stubborn adherence to ancient rules and a rash spirit of innovation it is not always easy to discover or define, but if the rules suggested in the foregoing opinion, to the effect that while salutary and established rules or principles should in general be adhered to, yet the court in particular cases, in its discretion, may relax or introduce exceptions to the rule, where substantial justice manifestly requires it, be followed, perhaps the practical administration of the criminal law will in some respects cease to deserve the reproaches of uncertainty and inefficiency which are now so freely made against it.