## UNITED STATES v. COBBAN.

(Circuit Court, D. Montana. January 21, 1904.)

No. 527.

**1. INDICTMENT—IRREGULARITIES IN PROCEDURE—SUFFICIENCY OF PLEAS.**

It is not essential that a plea to an indictment in a federal court for irregularities in the procedure should aver that the matters therein set forth were prejudicial to defendant, which is merely a legal conclusion; but facts showing such prejudice must be averred and proved under Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720], which provides that no indictment shall be deemed insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of any defect or imperfection in matter of form only which shall not tend to the prejudice of the defendant, and which applies as well to irregularities in procedure as to defects of form in the indictment.

**2. GRAND JURY—APPEARANCE OF GOVERNMENT COUNSEL—SPECIAL ASSISTANT TO DISTRICT ATTORNEY.**

Under Rev. St. § 363 [U. S. Comp. St. 1901, p. 208], which authorizes the attorney general to appoint attorneys "to assist the District Attorneys in the discharge of their duties," such assistant may perform any of the duties which devolve on the District Attorney, and a special assistant appointed to assist a District Attorney in a certain class of suits and prosecutions in his district may, by direction of the District Attorney, appear before the grand jury, and assist in the conducting of examinations by that body.

**3. SAME—SECRECY OF PROCEEDINGS—AUTHORITY OF COURT TO REVIEW.**

A court is not authorized to review the action of a grand jury at the instance of a defendant against whom an indictment has been returned by investigating the evidence before it either to ascertain whether all of it was competent or whether it was sufficient to justify the finding of the indictment, although it is perhaps competent to inquire into the proceedings of the grand jury under special circumstances where mistake or irregularity is charged.

**4. SAME—PROCEDURE—PROVINCE OF DISTRICT ATTORNEY.**

It is within the province of a district attorney in conducting an examination by a grand jury to explain both his case and the law to the jurors, reserving to them the right, when in doubt, to call upon the court.

**5. SAME.**

The conduct of proceedings before a grand jury by an assistant district attorney considered, and *held* not such as to affect the validity of indictments returned.

On Pleas to Indictments.

M. C. Burch and Fred A. Maynard, for the United States.
T. J. Walsh, for defendant.

BEATTY, District Judge. The many questions mooted in this matter have been considered, but, in the interest of reasonable brevity, all cannot be fully discussed here.

Indictments based upon alleged violations of the timber laws are returned as follows: Against defendant Cobban, twelve for subornation of perjury; against John B. Catlin, five for subornation of perjury and one for perjury; and against each of thirty-eight other parties, one for perjury. To each indictment are interposed ten separate pleas in

¶ 4. See Grand Jury, vol. 24, Cent. Dig. § 73.

abatement, being the same in each case, all of which have been submitted together.

It is stipulated that the order and judgment made in this case upon this hearing shall be made as to the pleas in all the other cases above referred to. These several pleas, which, for convenience, will be numbered, assign: (1) That Jury Commissioner Muth had no authority to act as such, and had not taken the official oath. (2) That the clerk and said Muth selected the names of jurors for the box promiscuously from the city directory. (3) That grand juror Hildebrand was not on the assessment roll. (4) That Fred A. Maynard, claiming to be an assistant United States attorney, appeared before the grand jury when he had not been commissioned as such; that no commission of his had been filed in the office of either the clerk or of the Attorney General, nor had he taken the official oath. (5) That he was not then an attorney or an official of the court, nor authorized by its order to so act. (6) It is included in the fifth. (7) That the original statement or affidavit, which it is alleged in the indictment was subscribed by Arnold Mickels, was never offered in evidence before the grand jury, and was never seen or considered by them. (8) That there was no testimony before the jury that said Mickels took an oath before any person that he would testify truly concerning any of the matters set out in the statement or affidavit recited in the indictment. (9) That before any witnesses were sworn said Maynard made an extended address to the jury, stating what the witnesses would testify to; that the defendant had entered into arrangement with various parties to obtain by fraud and perjury large tracts of timber lands; that he advised the jury as to their duty; that he read to them a report made by a department agent—Zevely—as to these alleged frauds; that he read various affidavits taken by said Zevely during his investigation, and urged them to return indictments; that the testimony demanded that they do so, and that it was their duty; that while the witnesses Howell and Hershey, both attorneys at law, were before the jury, he stated to each the substance of the testimony, and then propounded to them the question whether such being the testimony, it did not show a violation of the law, and that indictments should be returned (it seems that, lawyer-like, they desired to argue, instead of answer, the question, but, on being urged by Maynard, answered in the affirmative); that Howell then stated to the jury that some of the recited facts would be innocent, while others would be criminal, and endeavored to point out to the jury which constituted criminality and which not, but said Maynard refused to permit him to do so. And 10 is a mere repetition of the latter part of the last. There is the eleventh in this case, to the effect that Maynard entered into a conspiracy with the juror Hildebrand, by which, upon giving signals, the said juror should ask questions when he (Maynard), in answer, would improve the opportunity of making addresses to the jury, and urge it to find indictments. To each plea is added the allegation that defendant had not been held under arrest on this charge, and did not know that it would be investigated by the grand jury. The only office of this is to meet any objection that might be made that any of the questions raised by any of these pleas should have been met by a challenge to the array or otherwise. To such end it is sufficient. . . .

The government's counsel say that, as a plea in abatement is in its nature dilatory, "it must be certain to every intent, and the greatest accuracy and precision are required in framing it." Conceding the rule, the question remains whether these pleas do not come within it. They seem so framed as to be without any embarrassing ambiguity. As no particular uncertainties are designated, and as none are apparent, counsel's suggestion may be considered simply as the statement of a correct legal proposition.

The same counsel also assert that: "Another rule to which there is no exception is this: 'No indictment will be set aside on the ground of informalities and irregularities, unless it is averred in the pleas and proven that the defendant has been prejudiced in his substantial rights by reason of such informalities or irregularities;'" in support of which are cited section 1025, Rev. St. [U. S. Comp. St. 1901, p. 720], and 13 other citations. The distinct claim is that prejudice must be averred in the plea. If this were the law, it would end all further consideration of these pleas, for in none of them is there any such averment. These citations have been examined. They do not sustain counsel's proposition. The averment of prejudice is but a legal conclusion. Its existence must be established by the allegation and proof of the facts which show it. As, in Agnew v. United States, 165 U. S. 44, 17 Sup. Ct. 239, 41 L. Ed. 624, the plea averred prejudice, the question of the necessity of averring it could not arise, nor was it referred to; but it is said that "the plea is fatally defective, in that, although it is stated that the drawing 'tended to his injury and prejudice,' no grounds whatever are assigned for such a conclusion." From this it cannot be inferred that the court intended to hold that the averment of prejudice must be made, but it does distinctly say that the facts showing it must be averred. The only reference to this question in U. S. v. Terry (D. C.) 39 Fed. 355, is this: "The mere presence of the District Attorney, when the voting takes place, is at most an irregularity, which, when there is no proof or averment of injury or prejudice of the defendant, is a matter of form and not of substance." Of the citations, these are all which in any way refer to this point, but they all refer to some of the questions discussed in this case. It must, then, follow, that these pleas cannot be overruled because they omit the averment of prejudice.

The other part of counsel's proposition—that irregularities will not be considered unless proven to be prejudicial—is based upon said section 1025, and is supported by many authorities. That section provides that "no indictment * * * shall be deemed insufficient nor shall the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." In the interest of public justice this statute became imperative. Purely technical defenses, devoid of all merit, too often tipped the scales in favor of the lawless. Fortunately, this statute, as an armor to justice, directs that the existence of irregularity, if error of form, shall not be presumed a wrong to the accused; but it must be shown to be so. Among the authorities so holding are U. S. v. Ewan (C. C.) 40 Fed. 451, and Agnew v. U. S., 165 U. S. 44, 17 Sup. Ct. 238, 41 L. Ed. 624. The latter says: "Another general rule is that for such irregularities as do not prejudice the defendant he has

no cause of complaint, and can take no exceptions." Of the irregularities alleged by these pleas, and which are subject to this rule, may be mentioned those as to impaneling the jury, the disqualification of jurors, the appearance before the jury and taking part in its proceedings of improper persons, and irregularities of procedure and conduct before the jury. If there were doubts whether this section includes irregularity in the entire procedure or only those of form in the indictment, the ruling of Mr. Justice Brewer, concurred in by Judge Thayer, in U. S. v. Malloy (C. C.) 31 Fed. 23, disposes of them in favor of the first proposition.

Considering, then, the pleas in their order, 1, 2, 3, and 11 are overruled. The first two having been waived by defendant, and the last two having so little evidence in their support that their serious consideration is not justified. Pleas 4, 5, and 6 are in denial of Maynard's authority to appear before the grand jury as assistant district attorney. From the testimony it appears that on June 7, 1901, the Attorney General of the United States appointed him "Special Assistant to the Attorney of the District of Montana"; that on the same day he took his oath of office, and filed it in the office of the Attorney General; that before commencing his duties before the jury he exhibited his letter of appointment to the United States District Attorney of Montana, who then introduced him to the grand jury; that the indictments were returned on June 26th; that on the next day one was dismissed upon Maynard's motion, by order of the court; and that he was regularly admitted as an attorney of the court on January 14, 1902, when his appointment as such special assistant was filed. There is no question that the District Attorney of Montana recognized his right to appear officially before the jury, and was there with him. It is said that he acted without the knowledge or authority of the court. Grand juries perform their duties under the eye and general supervision of the court. It is a reflection upon the vigilance of the court to claim that he was before the jury day after day without its knowledge, and a greater reflection upon its integrity to intimate that it would permit an improper or unauthorized person to so appear. It must be concluded not only that the court had knowledge of his actions, but also that it was satisfied that he was a proper person, and authorized to act. That he was so recognized is clearly evidenced by the order, upon his motion, dismissing one of the indictments.

It is also objected that the written authority to him is not in form a commission; that the specification of the duties is indefinite, and does not include grand jury duties; and that the Attorney General has no power under the law to authorize any one to perform such grand jury duties. The important part of the written authority is as follows:

"You are hereby appointed a special assistant to the attorney of the United States for the District of Montana in the case in equity against W. A. Clark and some eighty-four other persons, civil and criminal, involved in alleged frauds under the stone and timber act in the state of Montana."

This instrument is issued over the signature of the head of the Department of Justice, and witnessed by its seal. It is only a technical balancing of words to say it is not in language and form a commission. If the department has the power of making such appointments, this instrument is sufficient in form to evidence the exercise of that power.

In the specification of the duties enjoined, it is not very definite, and, if technical accuracy were required in such instruments, I would think it subject to some of the criticisms made. But I take it that such an instrument need not be framed with the accuracy required of deeds, pleadings, and other legal documents. It is sufficient if it conveys to its recipient, and to those with whom he is to co-operate, the notice of the duties to be performed. This seems to have been such that the Montana officials understood it. The appointment was as assistant to the District Attorney, who would know from its statements the business which such assistant was to perform.

In support of the proposition that the Attorney General has not the power to authorize an assistant to conduct proceedings before the grand jury, much importance is attached to U. S. v. Rosenthal (C. C.) 121 Fed. 865. By a comparison of different parts of a statute, and applying thereto a strict technical construction, it may be held meaningless, or to convey an intent different from that which is most apparent. It seems to me that is what was done in that case. The imperative rule of construction is to sustain a statute, if possible, and especially to give it that meaning which its context naturally and most apparently conveys, instead of seeking, by a deft and subtle process, for some hidden design. It is the aim of the legislators to frame their acts in plain phrase, with an evident, instead of with a latent, meaning. In that light they should be read. In the Revised Statutes are collected from the different acts of various dates the provisions applicable to the Department of Justice. Section 363, Rev. St. [U. S. Comp. St. 1901, p. 208], is that "the Attorney General shall * * * employ and retain * * * such attorneys and counsellors at law as he may think necessary, to assist the District Attorneys in the discharge of their duties." Language could not make the authority any clearer than this: to appoint assistants to perform the duties devolving upon the District Attorney, which must mean all, including those before the grand jury. But that court said that, "If this section be read in connection with section 366 [U. S. Comp. St. 1901, p. 209], the assistance contemplated" is limited to the trial of a case. Why should the two sections be read together to get the meaning of the first. Some justification for this might exist were the sections a part of the same act, but they are not. Section 363 is one of three sections of an act of 1861 (Act Aug. 2, 1861, c. 37, § 2, 12 Stat. 285), while section 366 is part of an act of 1870 (Act June 22, 1870, c. 150, § 17, 16 Stat. 164), in which section 363 is not repealed, modified, or referred to directly or by implication. I cannot be persuaded that the intention of Congress in 1861 can be reached by consulting an act of 1870 which in no way refers to the former act. It should be noticed that the court held (page 869, 121 Fed.) that, as the appointment read "Assistant to the Attorney General," and in no way relates to the District Attorney, it could not have been made under section 363. In the case at bar, the appointment, being as assistant to the District Attorney, is directly within the terms of that section, and it must be held that it was within the power of the Attorney General to make the appointment. It is therefore concluded that the objections made by pleas 4, 5, and 6 are not well taken, and are at most but such irregularities as come within the operation of said section 1025 and the authorities based thereon. They are overruled.

The remaining pleas are based upon the testimony presented to and the proceedings had before the jury, and directly raise the question of the right of the court to investigate and consider such testimony and proceedings. This is the most important question involved, and because of the differing authorities demands careful consideration. Mr. Justice Swayne, while on the circuit, said in U. S. v. Ambrose (C. C.) 3 Fed. 285:

"It is proper to remark that the authorities upon the general subject as to how far an indicted party may go behind the indictment as regards the action of the grand jury, or the questions he may raise, or the objections he may make, or what objections, if sustained, are fatal, or what are otherwise, are in utter confusion upon the subject."

Having sought through the brief of defendant's counsel for his exact contention upon this question, I find it stated in one place that:

"Where it manifestly appears that there was incompetent evidence involved before the grand jury, that then the court must, if the matter is properly brought to the attention of the court by pleas in abatement or motions to quash, institute an inquiry, and determine whether the indictment was based upon sufficient competent testimony."

Clearly, this involves an investigation of the testimony produced before the jury, and a determination of its relevancy and sufficiency. If it be admitted that any of the testimony can be reproduced, then it all must be, if the defendant demands it, for there is no possible place in principle to draw the line between that which shall and that which shall not be received. We thus have the spectacle of the court sitting as one of error and review upon the case as heard before the grand jury, and this upon the sole demand of the defendant. I confess this is contrary to all my conceptions of the practice, and, if established, must lead to a miscarriage of justice. All that secrecy of investigation which for ages has been associated with the grand jury system, and which has been deemed an efficient means of its successful operation, is swept away, and all its proceedings must be made, if the defendant so wills, as public as those of a town meeting. A more serious objection is that a defendant may thus learn what testimony exists against him, and be prepared to overcome it upon the trial by perjury. It is idle to moralize that we cannot presume that perjury will be invoked in behalf of the guilty, for we know that it often is. To establish this rule of inquiry, and carry it to its legitimate conclusion, would, in my opinion, result in a shield to crime, for which, it must be admitted, there are already many avenues of escape.

It is doubted that any court has gone so far as to hold unqualifiedly that full investigation may be made of all testimony and proceedings had before the jury, but I think that the logical import of both the oral and printed argument of counsel is that such is the law. Time cannot be taken to review in detail the many authorities cited. The several subjects and their citations are not clearly separated in counsel's brief, but of those cited, as I understand, on this subject, are: Ex parte Schmidt, 71 Cal. 212, 12 Pac. 55, which holds that a juror must tell who testified before the grand jury, because the statute provides that the defendant is entitled to know. State v. Broughton, 29 N. C. 96, 45 Am. Dec. 507, is that, the case being on trial, a grand juror must testify to

what a witness at the trial had testified before the grand jury. This was the question in Commonwealth v. Mead, 12 Gray, 167, 71 Am. Dec. 741. The court said that, as to the competency of such evidence the authorities are not uniform, but it thought the evidence proper, and referred to Commonwealth v. Hill, 11 Cush. 140, as establishing the rule, wherein it is stated: "The sole ground of objection is that it is against public policy and the fundamental principles upon which the institution of the grand jury is based to admit any member of the body to testify to any fact which has transpired before them in the course of their investigations. But this is stating the rule much too broadly. The extent of the limitations upon the testimony of grand jurors is best defined by the terms of their oath of office, by which 'the commonwealth's counsel, their fellows, and their own they are to keep secret.' They cannot, therefore, be permitted to state how any member of the jury vote, or the opinion expressed by their fellows or themselves upon any question before them, nor to disclose the fact that a felony has been found against any person not in custody or under recognizance, nor to state in detail the evidence on which the indictments were founded." Way v. Butterworth, 106 Mass. 76, a civil case, in the trial of which testimony was given as to a party's testimony before a grand jury, and he was then permitted to state what he had testified to. There are a number of other citations in which the question was the admission of a grand juror's testimony to show that a witness on the trial had testified differently before the grand jury. The mere suggestion that such cases are not authority on the question under consideration is sufficient. It must also be remembered that state cases may be so controlled by local statutes that the latter should be considered to get the exact effect of the rulings. U. S. v. Kilpatrick (D. C.) 16 Fed. 765, is concerning the unauthorized acts of a party before the grand jury. The court, in admitting testimony as to such acts and quashing the indictment, discussed at much length the general duties and proceedings of grand juries, but said little as to its power to fully investigate the latter, and seemed to base its action upon local state authorities, which I do not think directly decide this question. In United States v. Edgerton (D. C.) 80 Fed. 374, the indictment was quashed because an expert witness was permitted to examine witnesses, and because the defendant was called to testify without notice that it was upon his case. United States v. Farrington (D. C.) 5 Fed. 343, is the chief case relied upon by defendant. It is by Judge Wallace, who is unquestionably among the most eminent of the circuit judges; but he was only a district judge when he rendered this decision. There had been most serious irregularities before the jury by an interested attorney. The court said:

"Ancient precedents have been enforced, and even extended, in modern cases, for the purpose of preventing any inquiry into the proceedings of the grand jury; and many authorities are cited to the effect that not only is it not permissible to show any irregularity or misconduct in their proceedings by the testimony of any person, but also that the lips of witnesses who appear before them are to be sealed, and that no person whose duty it may have been to be present shall be heard to impeach or impugn the propriety and regularity of their proceedings. Other authorities, however, are found which have adopted more liberal, and, as it seems to me, more sensible, views, and assert the right and duty of the court to exercise a salutory supervision over the proceedings

of a grand jury. It is only practicable to do this by removing the veil of secrecy whenever evidence of what has transpired before them becomes necessary to protect public or private rights."

After the citation of a number of authorities, it is said:

"The rule which may be adduced from the authorities, and which seems most consistent with the policy of the law, is that whenever it becomes essential to ascertain what has transpired before the grand jury, it may be shown, no matter by whom; and the only limitation is that it may not be shown how the individual jurors voted, or what they said during their investigation."

It will be observed that, save the two exceptions named, all other proceedings, including all the testimony given before the jury, may be made public. The government's counsel having, in detail, criticised the cases cited by the court as not supporting its conclusions, I have carefully examined them all, and must conclude that the rule, as broadly stated, is not clearly supported by the citations. As an authority for defendant's position, this case is weakened by its concluding part, in which it is said that it is not intended to suggest that the reception of incompetent evidence vitiates the indictment, nor to hold that the evidence upon which the indictment is found must be such as the court would regard as making a prima facie case. Also it says that it is not the province of the court to sit in review of the investigations of the grand jury as upon a review of a trial; but in extreme cases, when the court can see that the finding is based upon such utterly insufficient or such palpably incompetent evidence as to indicate that the jury acted from prejudice, it should quash the indictment; but to quash because the evidence was inadequate, or because the rules of evidence had been violated, the court would become the tribunal for indicting as well as trying. On the contrary, the government maintains, generally, that the proceedings, and especially the testimony before the grand jury, cannot be investigated, and in its support names numerous authorities, only a few of which will be referred to. In U. S. v. Reed, 2 Blatchf. 435, 27 Fed. Cas. 727, was a motion to quash the indictment for, among other reasons, the insufficiency of the evidence. Says Mr. Justice Nelson: "No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence for the purpose of determining whether or not the finding was founded upon sufficient proof;" and, further, that it was contrary to the policy of the law to try the question whether the grand jury had sufficient or any evidence to warrant their finding. This case is important because by a justice of the Supreme Court, and its ruling is clear and explicit. To same effect is U. S. v. Brown, 1 Sawy. 533, Fed. Cas. No. 14,671, and U. S. v. Terry (D. C.) 39 Fed. 355. This latter case bears upon several of the questions involved in this case. It says many authorities hold that under no circumstances will the court inquire into the character of the evidence upon which the indictment was found, and that its presentment, duly indorsed, is conclusive of the regularity of the proceedings. Of the numerous state authorities which sustain the same views, reference will be made to but two: State v. Fasset, 16 Conn. 458, and Hope v. People, 83 N. Y. 422, 38 Am. Rep. 460, which says:

"We find no authority for the position that the sufficiency of the evidence upon which an indictment is found by the grand jury is a question which can be raised by plea to the indictment, or that the reception of incompetent or irrelevant evidence by the grand jury can be pleaded."

After a careful examination of many of the numerous citations, the conclusion is that the decisive weight of authority, both as to numbers and dignity, and in which this question was directly involved, is against the investigation of the evidence had before the grand jury, either to show that some of it was incompetent or that all of it was insufficient to justify the finding of the indictment. For that reason, and the additional one that I think it the better rule, it is here followed.

Concerning the question of the sufficiency of the testimony in the case at bar, it should be noted that upon each indictment are indorsed the names of 13 witnesses who testified before the jury, and there is nothing in this record to positively show that their joint testimony was not sufficient to justify the jury's action. But that an indictment so imparts absolute verity that it cannot be assailed except for such errors or irregularities as are evident upon its face, and that in no case can evidence be given of any proceedings had before the grand jury, may be doubted, notwithstanding the holding of some authority. The frequently stated reason for any investigation of such proceedings is for the enforcement of public justice and for the protection of private rights. An unbridled investigation will not promote these objects. They should be kept in view in any investigation permitted. No attempt will be made to formulate any rule under, or to enumerate the cases in which, investigations may be safely permitted. It does not militate against public justice, but does protect individual rights, to show that an indictment returned as "a true bill" was intended to be returned as "not a true bill," or that by mistake one is returned in which less than the required number of jurors had concurred. Other like errors might be shown with safety to the public interest. Independent of any fixed rule, these questions must be met and determined by the courts as they shall arise.

Leaving out of consideration either the competency or sufficiency of the testimony had before the jury, and conceding the power of the court to investigate the proceedings as far as they relate to the conduct of said Maynard in the matters before stated, we will consider the testimony taken in this hearing by the defendant, which was over the objection of the government. It contended that the court was without authority to take testimony. To show that undue influence and zeal were used by him to procure the indictments, the foreman, Curtis, and Kenyon, Fallon, and Kennedy, members, of the jury, were examined. Curtis said that District Attorney Rogers and Maynard were both present, but Maynard chiefly conducted the proceedings; that at the opening he made quite an address, stating what the witnesses would testify to; what constituted illegal entry and what perjury; that the land entries were made for the benefit of others to whom the lands were to be deeded; that he connected Cobban with it; that, if the evidence proved as he said, we should find indictments. Kenyon said he thought Maynard made a statement of what the matter was and what the witnesses would testify to; that District Attorney Rogers and the jurors asked ques-

127 F.—46

tions, but Maynard did most; that the statute on perjury was read to them; Maynard's statement, he thought, consumed five minutes; did not think anything was said at any time by Maynard that they should return indictments other than as they felt justified from the evidence; that he read from the former affidavits of witnesses, and then asked them if their statements therein were true; that upon his objecting to this mode of examination he changed it. The other two jurors stated about the same. The testimony, all fairly considered, I think shows that he stated the facts he expected to establish and explain the law applicable. I think from the testimony of Curtis he was overzealous, but his testimony is much modified by that of the other witnesses. . It must be noticed that these witnesses were all pressed by counsel to the limit of the rule. I believe it is said by some courts that the jury must get its advice on the law only from the court. Undoubtedly, a jury may call on the court whenever it desires, but to march in on the court whenever a question of law is suggested is a practice not to be encouraged. The prosecuting officer is presumed to be learned in the law. I deem it within his province to explain both his case and the law to the jury, but reserving always to the jury the right, when in doubt, to call upon the court.

The hypothetical questions proposed to the attorneys Howell and Hershey, it seems, were under these circumstances: During the investigation it was learned that Griswold, a witness against the defendant Cobban, had made a former affidavit exculpating him; that the jury was adjourned for several days, and without the knowledge of Maynard these two witnesses were brought with the Griswold affidavit. It was charged that they were subpœnaed at the foreman's request, but it is not shown, except by inference, who did it. Howell had been Cobban's attorney in several matters, and Hershey was the son-in-law of Catlin, one of the indicted parties. Considering all the evidence, I am convinced that Maynard was taken by surprise by the appearance of these attorneys and the Griswold affidavit, and seeing in it an attempt to introduce a defense for the accused, and getting into a discussion with the attorneys, which it is evident from the testimony they precipitated, he asked them the question he did. Under these circumstances I doubt that his action is subject to serious, if any, criticism. Moreover, I think that the influence that was invoked in defendant's behalf was more favorable to him than Maynard's action, growing out of this episode, was against him, and he cannot complain.

All the many questions raised by counsel have been duly considered, but to have here discussed each, would make this unreasonably lengthy. Of the questions raised by these pleas some are frivolous, some are not supported by the testimony, and others are as to mere irregularities, which cannot avail the defendant until it clearly appears that he was prejudiced by them. It does not, in my opinion, so appear, but, on the contrary, I am satisfied, from a consideration of all that occurred before the jury, so far as shown by this record, and from a consideration of the whole record, that the jurors were not influenced by any of the matters complained of—and none of them testified that they were—but that they acted upon their judgment from a consideration of the testimony submitted to them.

I do not feel justified in setting aside any indictment until clearly convinced that it is undeniably wrong. This indictment is sustained, and the pleas in abatement are overruled.