MANGAN, ADMINISTRATOR OF PILLOW, *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 112.   Argued December 10, 1920.—Decided January 3, 1921.

To establish a claim, under Jud. Code, § 162, to the proceeds of property seized by the Government under the Abandoned Property Act of March 12, 1863, the claimant must prove his ownership at the time of seizure. P. 496.

54 Ct. Clms. 207, affirmed.

THE case is stated in the opinion.

*Mr. Chas. F. Consaul,* with whom *Mr. John S. Blair* and *Ida M. Moyers* were on the brief, for appellant.

· Mr. Assistant Attorney General Davis for the United States.

MR. JUSTICE CLARKE delivered the opinion of the court.

Essential findings of fact by the Court of Claims in this case are as follows:

On January 23, 1863, John H. Hamiter, of Arkansas, sold 175 bales of cotton to the Government of the Confederate States and executed and delivered a bill of sale, containing this paragraph:

"The undersigned having sold to the Confederate States of America, and received the value of same in bonds, the receipt whereof is hereby acknowledged, 175 bales of cotton, marked, numbered and classed as in the margin, which is now deposited at my plantation, hereby agrees to take due care of said cotton whilst on his plantation, and to deliver the same as (at) his own expense at Conway, on Red River, in the State of Arkansas, to the order of the Secretary of the Treasury, or his agents or their assigns."

The payment in bonds not being made, "five or six months later" Hamiter notified the agent of the government that if they were not delivered, he would treat the sale as rescinded, and, the bonds not being forthcoming, he sold the cotton to his father, who died not long thereafter.

About two years later, in September, 1865, Hamiter, "as administrator or other agent of his father's estate," sold 70 bales of the cotton to plaintiff's decedent, then Mrs. Trigg (afterwards Mrs. Pillow) and received pay for it. Mrs. Pillow sent it to the Red River for shipment to market, where it was seized by the United States Treasury agents, under authority of "An Act to provide for the Collection of abandoned Property" &c., approved March 12, 1863, c. 120, 12 Stat. 820. It was sold, and

for the proceeds paid into the United States Treasury Mrs. Pillow, since deceased, instituted this action.

The Court of Claims dismissed the petition without an opinion, probably because it deemed the showing of title to the cotton by the claimant's decedent so obviously insufficient as not to require discussion.

The only warrant for such a suit at this late day is found in § 162 of the Judicial Code and to entitle the claimant to recover he must prove that his decedent was the owner of the cotton at the time it was seized. *Thompson* v. *United States*, 246 U. S. 547, 549.

There is no finding by the Court of Claims that Mrs. Pillow was the owner of the cotton when it was seized, but it is argued that facts are found which require that conclusion. These are: that Hamiter owned the cotton, that he sold it to Mrs. Pillow who paid for it, and that after she took possession of it the Government seized it. It is argued that these facts show title in her, which was not divested by anything afterwards done by her, and therefore the claim of her representative for the proceeds of the cotton should be allowed.

Other facts found, however, on which we must proceed to judgment are: that Hamiter sold the cotton to the Confederate States government, and when it was not paid for declared the sale void and then sold it to his father; that afterwards, "as administrator or other agent of his father's estate," he sold it to Mrs. Pillow; and that after she had failed to secure its release by the United States Government, she demanded that Hamiter should refund to her the purchase price. This demand at first Hamiter refused but "upon fear of threatened arrest and punishment for his transactions in connection with the cotton," he consented, gave his note to Mrs. Pillow for the amount of the purchase price and filed a claim for the cotton in his own name, which was disallowed. Thus Hamiter obviously thought the contract in form a sale had been

rescinded by mutual consent, and that Mrs. Pillow was of the same conviction is shown by the fact that when Hamiter's note at six months was not paid she sued him upon it but "it does not satisfactorily appear what was the result of this suit."

The natural and impressive inference from these facts is, not that Mrs. Pillow obtained from Hamiter a good title to the cotton and a right to the proceeds of it, but that these two persons, parties to the sale, who were fifty years nearer to it than courts can now be placed and who knew more about it than it is possible now to learn, agreed that it should be rescinded because of the prior "transactions [of Hamiter] in connection with the cotton," which must mean that the title which he was able to confer upon Mrs. Pillow was not deemed by her satisfactory, and therefore, by mutual agreement she released all interest in the cotton and necessarily in the proceeds of it. No rights of third persons being involved, the parties were as competent to rescind the contract of sale as they were to make it, and the finding of fact is that they did so for what Mrs. Pillow obviously thought a sufficient consideration.

We are not concerned with whether Rev. Stats., § 3477, prevented the transfer to Hamiter of any rights against the Government which Mrs. Pillow may have had. The claimant did not undertake to prove that Hamiter, or anyone else, had a valid claim, but that Mrs. Pillow owned the cotton at the time it was seized, and this, we think, he failed to do, and therefore the judgment of the Court of Claims must be

*Affirmed.*