## UNITED STATES v. MORSE et al.

(District Court, S. D. New York. September 27, 1922.)

1. **Grand jury ⬤⟹34—Direction to special assistant to Attorney General sufficiently specific to authorize participation in grand jury proceedings.**

Relative to claimed invalidity of indictment, on the ground that participation in the proceedings of the grand jury room by a special assistant to the Attorney General was unauthorized, *held*, that by his appointment he was sufficiently "specifically directed" by the Attorney General, as required by Act June 30, 1906 (Comp. St. § 534), so as to authorize him to conduct the investigation and prosecution, including grand jury proceedings, at least against those of indictees named in the appointment.

2. **Attorney General ⬤⟹2—Special assistant may be authorized to take proceedings in more than one district.**

Authority to take proceedings in more than one district is not broader than authorized by Act June 30, 1906 (Comp. St. § 534), providing that a special assistant to the Attorney General may, "when thereunto specifically directed" by the Attorney General, conduct any kind of legal proceeding which district attorneys are authorized to conduct, whether or not he be a resident of the district in which such proceeding is brought.

3. **Grand jury ⬤⟹39—Authorized presence of special counsel to prosecute certain persons held not to invalidate indictment against another.**

The fact that a special assistant to the Attorney General, properly before the grand jury to investigate infractions of law by certain persons, brought out evidence which affected some one else in connection with the inquiry, does not invalidate the indictment found by the grand jury on such evidence against such other person, though the special assistant had no specific authority to investigate such other person.

4. **Attorney General ⬤⟹2—Appointment as special assistant of special counsel to the United States Shipping Board, to serve without other compensation, held not invalid.**

Appointment as special assistant to the Attorney General to investigate alleged crimes arising out of transactions affecting the operations of the Emergency Fleet Corporation, of one who was then special counsel to the United States Shipping Board Emergency Fleet Corporation, and who was then receiving compensation as such, with direction to serve as special assistant attorney without other compensation than he was then receiving, *held* not invalid, as violating either Rev. St. § 3678 (Comp. St. § 6764), providing that sums appropriated for the various branches of expenditure in the public service shall be applied solely to the object of which they are made, or section 3679 (Comp. St. § 6778), providing that no department or officer of the government shall accept voluntary service for the government or employ personal services in excess of that authorized by law, or Act March 3, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3231a), providing that no government official or employee shall receive any salary in connection with his services as such official or employee from any source other than the government, in view of presidential order of May 31, 1918, placing law officers under control of the Department of Justice, the fact that such assistant is paid out of funds appropriated "to supply deficiencies * * * and for other purposes," and the further fact that the Emergency Fleet Corporation is in a substantial sense a governmental agency, and that its funds belonged in

---

equity to the United States, and that its property, under the Merchant Marine Act of 1920, was transferred to the government.

5. **Grand jury ⬩⬩⬩38—Indictment not invalidated by presence of stenographer.**

Indictment is not invalidated by presence in the grand jury room of a stenographer employed by the government to report the proceedings.

6. **Indictment and information ⬩⬩⬩137(4)—Not quashed for insufficient evidence.**

An indictment will not be quashed for insufficiency of the evidence before the grand jury.

7. **Criminal law ⬩⬩⬩627½—No right to disclosure of evidence before grand jury on allegation on information and belief of insufficiency.**

Defendant may not have a disclosure before trial of the evidence before the grand jury on a mere allegation on information and belief that there was lack of evidence before it on which to base the indictment.

8. **Indictment and information ⬩⬩⬩137(3)—Incorrect statement of government's attorney to grand jury on defendants requesting leave to testify before it held no ground of objection to indictment.**

Defendants having no right to go before the grand jury unless by consent of the prosecution, except the grand jury suggest sua sponte that they desire to hear their testimony, and there being no reason to suppose the grand jury desired to receive evidence from them, incorrect statement of the government's attorney to the grand jury, on defendants making request to them for leave to testify, is not ground of objection to the indictment.

9. **Indictment and information ⬩⬩⬩137(2)—No ground of objection that grand jurors were drawn from a different list than that for petit jurors.**

It is no ground of objection to an indictment that, by the court's order, two lists, one for grand juries, the other for petit juries, were maintained; nothing in the statute governing the drawing of juries preventing such action.

10. **Indictment and information ⬩⬩⬩137(2)—No ground of objection that notices to grand jurors were mailed, instead of being served personally.**

It is no ground of objection to an indictment that notices were mailed to the grand jurors, instead of being served personally by the deputy marshal; no prejudice being shown by failure to summon them in the exact mode set forth in the statute, it being directory and not mandatory.

Criminal prosecution by the United States against Charles W. Morse and others. On pleas in abatement and motions to quash the indictment by certain defendants, and on counter motions of the government. Motion to strike pleas granted; motion to quash denied.

The motions to quash the indictment and pleas in abatement have been filed by the defendants William A. Barber, Stuart G. Gibboney, and Martin J. Gillen, and a motion to quash the indictment has been filed by the defendant Milton C. Quimby, upon the following grounds which were presented by some or all of said defendants:

(a) Unauthorized presence and participation in the proceedings of the grand jury room of Fletcher Dobyns, special counsel to the Attorney General, not lawfully authorized to act.

(b) Unauthorized presence in the grand jury room of C. George Behre, a stenographer employed by the United States to report the proceedings before grand juries in the Southern district of New York.

(c) Lack of evidence before the grand jury on which to base an indictment.

(d) Refusal of Dobyns to allow defendants Barber and Gibboney to waive immunity and testify before the grand jury, and incorrect statement to the grand jury, when said defendants had sent a written request to the grand jury for leave to testify, that the defendant Charles W. Morse in grand jury

⬩⬩⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

proceedings in Washington had applied for leave to go before them, and the request had been denied, and that the grand jury here were entitled to use this as a precedent, whereas in fact said defendant Morse had made the application to the United States attorney in Washington, and not to the grand jury.

(e) Improper drawing and constitution of the grand jury.

The government moves that the pleas in abatement be stricken out and the motions to quash be denied.

Bouvier, Caffey & Beale, of New York City (H. Snowden Marshall, Francis G. Caffey, and Benjamin A. Matthews, all of New York City, of counsel), for defendants Barber and Gibboney.

Root, Clark, Buckner & Howland, of New York City (Emory R. Buckner and Harold Harper, both of New York City, of counsel), for defendant Gillen.

Kaufmann & Kaufmann, of New York City, for defendant Quimby.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). [1-3] The right of Fletcher Dobyns to appear before the grand jury depends on (1) whether the designation as counsel which he received from the Attorney General was sufficiently specific; (2) whether, if sufficiently specific, his appointment was rendered invalid because he was acting as special counsel of the United States Shipping Board Emergency Fleet Corporation, or of the United States Shipping Board, and was paid from the funds of the former, as the pleas allege. Fletcher Dobyns' designation was made by the Attorney General under the Act of June 30, 1906 (Comp. St. § 534), which provides as follows:

"The Attorney General, or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys now are or hereafter may be authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

Under the authority of this statute, the Attorney General appointed Mr. Dobyns, in a letter dated April 1, 1922, which is set up verbatim in the pleas in abatement, gave the appointee wide powers, and closed the letter with the words:

"You are to serve without compensation other than received by you as special counsel United States Shipping Board."

He also gave an appointment by a letter dated November 21, 1921, which is set up in Mr. Dobyns' affidavit of May 18, 1922, in opposition to the motions to quash, containing even wider authority. The letter of April 1, 1922, specifically mentioned investigation and prosecution under sections 37, 215, and 216 of the Criminal Code (Comp. St. §§ 10201, 10385, 10386), the last two of which were not referred to in the first letter, and each gave authority to conduct in the Southern district of New York and other judicial districts, civil or criminal, including grand jury proceedings which district attorneys might be authorized to conduct.

This last letter particularly refers to the Southern district of New York, and says that in connection with the investigation and prosecution of alleged violations of sections 37, 215, and 216 of the Criminal Code and of other provisions of law by certain persons named and others engaged in the sale of the stock of certain named corporations Fletcher Dobyns is authorized and directed to conduct any kind of legal proceedings, civil or criminal, which district attorneys are now authorized to conduct. It is not shown in the plea in abatement that the investigation was not of interrelated companies and of persons having to do directly or indirectly with the sale of their stock. The letter of appointment would naturally relate to causes of action, criminal or civil, in which the United States was interested growing out of the relation. I see no reason for assuming, because on the face of the letter no interrelation is set forth, that it is not sufficiently specific. Indeed, it probably is as specific as was possible, if adequate power to deal with the situation without impairment of usefulness or unnecessary reduplication of labor were to be given. Nor does the fact that proceedings may be taken in more than one district render the authority broader than the act of 1906 justifies, for no such limitation seems necessarily involved in the language of the act, and to impose it would cause unnecessary inconvenience in enforcing the law.

The decision of Judge Morton in the case of United States v. Cohen (D. C.) 273 Fed. 620, is not in the least in conflict with these views. He held that an authorization to special counsel to conduct grand jury proceedings in a certain class of cases did not cover the right to file informations. The difficulty there was, not that the authorization was too broad, but that it was too narrow, to cover the case. It should be added that each of the defendants, except Milton C. Quimby, who has filed a plea in abatement or moved to quash because of the supposed irregularity of Mr. Dobyns' appointment, is specifically named in the letter of April 1, 1922, among those included in the governmental investigation. For this reason alone the letter of appointment was adequately specific as to them. Moreover, in the case of Quimby it was of course the grand jury that found the indictment, and if a special counsel properly before them to investigate alleged infractions of law by others whom he was appointed to prosecute brought out evidence which affected some one else in connection with the inquiry, I cannot regard his lack of specific authority to investigate Quimby, even if it had existed, as sufficient to invalidate the indictment as to him.

[4] The second objection to Mr. Dobyns' appointment is that he was special counsel to the United States Shipping Board Emergency Fleet Corporation, and was receiving compensation as such when directed to serve as Special Assistant Attorney General without further compensation before the grand jury which found this indictment. This is said to have violated three different statutes:

(1) R. S. § 3678 (Comp. St. § 6764), which provides that all sums appropriated for the various branches of expenditure in the public service shall be applied solely to the objects for which they are made, and no other.

(2) R. S. § 3679 (Comp. St. § 6778), which provides that no department or officer of the government shall accept voluntary service for the government or employ personal services in excess of that authorized by law.

(3) Act March 3, 1917, 39 Stat. 1106 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3231a), which provides that no government official or employee shall receive any salary in connection with his services as such an official or employee from any source other than the government of the United States.

Mr. Dobyns' salary, according to the statement in his affidavit, which I suppose will not be questioned, is paid by checks on the treasury of the United States. In view of the presidential order of May 31, 1918, placing law officers under control of the Department of Justice, I cannot see why his employment cannot be for any governmental purpose. In the government's brief it is stated that he is paid out of funds appropriated by "An act making appropriations to supply deficiencies for the fiscal year ending June 30, 1921, and prior fiscal years, and for other purposes," approved June 16, 1921. 42 Stat. 29. This would seem to be a fund available for general purposes. Dobyns was not working in this case without compensation. There is no provision of law requiring a Special Assistant to the Attorney General to be paid out of funds appropriated for the Department of Justice. Even if he was paid out of the funds of the Emergency Fleet Corporation, those funds belonged in equity to the United States, and his employment and pay cannot be regarded as by a private corporation. That corporation, though not exempt, like the United States, from liability except by virtue of special statutes, is in a substantial sense a governmental agency, and its property under the Merchant Marine Act of 1920 (41 Stat. 988), was transferred to the government.

While by the decision in United States v. Strang, 254 U. S. 494, 41 Sup. Ct. 165, 65 L. Ed. 368, an employee of the Emergency Fleet Corporation was held not to be an officer of the United States, so as to subject him to a criminal statute, such a case did not in my opinion involve the conclusion that the Emergency Fleet Corporation is so absolutely a private corporation that its funds, though belonging to the United States, could not be used to pay an Assistant Attorney General for prosecuting crimes alleged to have arisen out of transactions affecting its operations. Furthermore, I cannot regard Mr. Dobyns as in a proper sense a private attorney serving the United States without compensation, like the one in the case of U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747.

[5] The presence of a stenographer in the grand jury room has long been held in this district as no ground for invalidating an indictment. The pleas and motions to quash, based on this objection, are therefore insufficient. U. S. v. Simmons (C. C.) 46 Fed. 65; U. S. v. Heinze (C. C.) 177 Fed. 772; U. S. v. Rockefeller (D. C.) 221 Fed. 462.

[6, 7] The next ground of objection to the indictment is insufficiency of the evidence. Never to my knowledge has an indictment been held bad in this district because of insufficiency of evidence before the grand jury. If the latter body has been improperly constituted, or if

fraud or misconduct is shown, a case may arise for examining the proceedings; but in my opinion nothing less is sufficient. U. S. v. Reed, Fed. Cas. No. 16,134; United States v. Cobban (C. C.) 127 Fed. 713; United States v. Nevin (D. C.) 199 Fed. 831; McKinney v. United States, 199 Fed. 25, 177 C. C. A. 403. Indeed, it has, I think, generally been regarded in this district as impossible for a defendant to obtain an order for examination of the minutes, as may be done in the New York state courts. To raise the question by a motion to quash or a plea in abatement, rather than by a motion to examine the minutes, is a much more awkward practice than that employed in the state courts. The only objection to the state practice is the disclosure of the prosecutors' evidence, whereas the method sought here involves not only this disclosure, but, in effect, a double trial.

Judge Manton, in United States v. Perlman (D. C.) 247 Fed. 158, while refusing to grant an inspection of the minutes, said that such a motion might be granted in a proper case. Doubtless enough can be shown in some cases to warrant the making of such an order; but here, not only is no fraud alleged, but the only allegations of insufficiency of evidence are made upon information, without disclosing the sources of the information. If the defendants can put the government to pleading or proof upon such averments, applications for such relief will be hereafter made in a multitude of cases, and will render the administration of the criminal law most dilatory and cumbersome, as well as cause an unnecessary disclosure in many instances of the government's case. In this case it is said that no minutes were taken, but proof of the proceedings should be held equally inaccessible upon the showing made. Cooper v. United States, 247 Fed. 48, 159 C. C. A. 263; United States v. Bopp (D. C.) 232 Fed. 177; United States v. Nevin (D. C.) 199 Fed. 831.

[8] The next objection taken is to the alleged incorrect statement by Dobyns to the grand jury that C. W. Morse had made an application to the grand jury in Washington to appear before it, and that this application had been denied by the grand jury. This statement is insufficient to invalidate the indictment. The defendants had no right to appear before the grand jury. They had no right to require the United States attorney to present their request to be heard. There is no reason to suppose that the grand jury desired to receive evidence from them. If the pleading correctly states the facts, Dobyns erred in saying that the Washington grand jury refused to hear C. W. Morse, because the refusal was only by the United States attorney in Washington. I do not think however, that such an error deprived the defendants of a substantial right, for they had no right to go before that body unless by consent of the prosecution (U. S. v. White, Fed. Cas. No. 16,685), or unless the grand jury suggested sua sponte that they desired to hear their testimony because the testimony already adduced left the grand jury in doubt as to a proper determination. (U. S. v. Terry [D. C.] 39 Fed. 363). It must be remembered that a proceeding before a grand jury is an inquest and not a trial. If defendants are treated as having any right to be heard, the whole affair is likely to cease to be an ex parte proceeding resulting in a charge which can

be fully met at the trial, but to become a litigation in which each side has the right to offer evidence, and an indictment can only be found if the evidence on the whole case preponderates against the defendants. Such it is believed was never the function of the Grand Inquest. United States v. Terry (D. C.) 39 Fed. 355.

[9, 10] The final objection made to the indictment is that the grand jury which rendered it was improperly drawn and summoned. Two lists, one for grand juries and one for petit juries, have been maintained in this district by order of court. I find nothing in the statute governing the drawing of juries which prevents such a practice. No claim of unfairness is alleged, and there is no reason to suppose that, if the lists are properly made up, the grand and petit jurors must be taken from identical lists. That jurors for the Circuit Court could be drawn from the District Court list, when there were two separate courts, has been decided. U. S. v. Greene (D. C.) 113 Fed. 683. As long as the jurors are fairly selected by the proper officials and drawn from a box containing not less than 300 names, the statute has been complied with. It has been the custom in this district to mail the jury notices, instead of serving them personally by a deputy marshal. The provision of the statute in this regard is directory, and not mandatory, and no prejudice is shown by failure to summon the jurors in the exact mode set forth in the Statute. Breese v. U. S., 203 Fed. 824, 122 C. C. A. 142; United States v. Ambrose (C. C.) 3 Fed. 283.

If the statements of the defendants that there was no sufficient evidence before the grand jury to warrant the indictment be true, the indictment is most unfortunate and unjust. It is much better, however, that they should be required to meet the charges in the ordinary way than that a mere allegation upon information and belief that the government has no case should force the prosecuting officer to disclose his evidence in advance of the trial. Allegations of insufficiency of evidence before the grand jury furnish no basis for requiring the government to disclose its case in answer to a motion to quash. A contrary rule would throw our whole criminal practice into confusion.

The motion to strike out the pleas in abatement is granted, and the motions to quash are denied.