### KASTEL v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
December 19, 1927.

No. 8.

**1. Criminal law ⬤➡295—Defendant, on plea of double jeopardy, has burden of proof.**

On a plea of double jeopardy, defendant has the burden of proof, and must make out his case.

**2. Criminal law ⬤➡295—Proof jury requester bailiff for additional 15 minutes held, as to former jeopardy, not to affirmatively show discharge before hope of agreement abandoned.**

Where judge, at 4 o'clock in the afternoon, instructed clerk to discharge jury if they had not agreed at 9:30, and jury, on bailiff's inquiry at such time, requested another 15 minutes, at which time they stated they could not agree, there was no affirmative proof that jury was discharged before giving up hope of agreement, so as to authorize subsequent plea of former jeopardy.

**3. Criminal law ⬤➡1174(1)—Judge's action in leaving jury without means of communicating with him, when instructing clerk to discharge them at certain time, did not require reversal.**

Action of trial judge in leaving jury at about 4 o'clock in the afternoon, and instructing clerk to discharge them if they had not agreed at 9:30, without means of communicating with him, *held* not to require reversal, though improper, since time fixed for discharge was reasonable, and judge is under no duty to keep jury out all night.

**4. Indictment and information ⬤➡140(2)—Defendant's affidavit on information and belief held insufficient to sustain motion to quash indictment.**

Defendant's affidavit, on information and belief, that grand jury had no competent evidence on which to indict him, *held* insufficient to sustain motion to quash indictment.

**5. Post office ⬤➡50—Failure of charge, in prosecution for using mails to defraud, to limit jury's consideration to certain representations alleged, held not erroneous.**

In prosecution for using the mails to defraud, by soliciting customers to buy stocks by falsely representing that shares would be kept for them, charge *held* not erroneous for failing to limit jury's consideration to representations of inducing defendant's customers to pay interest, and other charges on debit balances as alleged *held* not erroneous, since such allegation was merely an incident, and to confine charge thereto would defeat plain intendment of indictment as a whole.

**6. Criminal law ⬤➡784(2)—Trial judge need not characterize evidence as direct or circumstantial.**

Trial judge, in prosecution for using mails to defraud, by soliciting customers to buy stocks by false representations, need not characterize the evidence either as direct or circumstantial.

In Error to the District Court of the United States for the Southern District of New York.

Phil Kastel was convicted for using the mails to defraud, and he brings error. Affirmed.

The fraudulent scheme laid was that the defendant and two accomplices should solicit customers to buy stocks, by falsely representing to them that they would buy and keep for them their shares, when in fact, though they bought, they at once sold, "thereby inducing such customers to pay interest and other charges" upon their unpaid debit balances. These representations were meant to induce the customers to part with their money, which the defendants might then convert.

Four questions arise upon this writ: First, a plea of former jeopardy; second, a motion to quash the indictment; third, an error in the charge; fourth, the refusal of a request to charge.

The first point arises from a former trial upon the same indictment, which resulted in a disagreement of the jury. Upon that trial, at the conclusion of the evidence, the judge charged the jury and sent them out at 1 p. m. He then waited until about 4 o'clock without word from them, and called the assistant district attorney and one of the counsel for the defendant to his chambers, where he asked them whether "we wanted to keep the jury here all night." Neither party expressing any such wish, the judge instructed the clerk to discharge the jury if they had not agreed at 9:30 p. m. He thereupon left the building, and in his absence the jury asked for certain exhibits and to hear read the testimony of a witness. As the clerk's efforts to reach the judge were unsuccessful, this could not be granted, and they sent no other message. At 9:30 a bailiff opened the door of the jury room and asked if they had been able to agree. They asked for 15 minutes more, at the end of which the bailiff again asked them if they had been able to agree, and they again said, "No," whereupon they were discharged.

The second point arises upon the denial of a motion to quash the indictment because the grand jury had no competent evidence before it upon which to indict. This motion was supported by an affidavit of the defendant, alleging on information and belief that one Keyes Winter, the receiver in bankruptcy of the defendant, was the only witness sworn by the grand jury, and that it was impossible that he should have given competent proof of the facts.

The third point is that the judge, in charging the jury, did not limit their consideration to such representations as induced the defendant's customers to pay interest and other charges upon their debit balances. On the contrary, he allowed them to convict if they found that the defendant had procured any money by falsely assuring them that he would buy and hold their shares.

The fourth point was a refusal by the judge to charge that there was only circumstantial evidence of the crime.

Vincent T. Follmar, of New York City, for plaintiff in error.

Charles H. Tuttle, U. S. Atty., of New York City (David W. Peck and Laurens Hastings, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] Upon the plea of double jeopardy the defendant has the burden of proof, and must make out his case. Com. v. Wermouth, 174 Mass. 74, 54 N. E. 352; People v. Schepps, 231 Mich. 260, 203 N. W. 882; State v. Ackerman, 64 N. J. Law, 99, 45 A. 27; State v. Williams, 43 Wash. 505, 86 P. 847; Harlan v. State, 190 Ind. 322, 130 N. E. 413; Price v. State, 104 Miss. 288, 61 So. 314; Barber v. State, 151 Ala. 56, 43 So. 808; Territory v. West, 14 N. M. 546, 99 P. 343; State v. Freeman, 162 N. C. 594, 77 S. E. 780, 45 L. R. A. (N. S.) 977; Jacobs v. State, 100 Ark. 591, 141 S. W. 489; Storm v. Territory, 12 Ariz. 109, 99 A. 275; 1 Bishop, New Crim. Proc. § 816 (2). Three questions arise under the plea at bar: First, whether the judge exercised a proper discretion in instructing the clerk to discharge the jury at 9:30 and then absenting himself; next, whether the discharge interrupted the jury's deliberations before they had come to a permanent deadlock; last, whether, if it did, this operates as an acquittal.

The last question, as we view it, is not presented, and we may pass it. Some of the cases turn upon local statutes. People ex rel. Stabile v. Warden, 202 N. Y. 138, 95 N. E. 729; People v. Greene, 100 Cal. 140, 34 P. 630; State v. Klauer, 70 Kan. 384, 78 P. 802; State v. Shuchardt, 18 Neb. 454, 25 N. W. 722. The common-law doctrine in Pennsylvania (Com. v. Fitzpatrick, 121 Pa. 109, 15 A. 466, 1 L. R. A. 451, 6 Am. St. Rep. 757), and originally in California (People v. Cage, 48 Cal. 323, 17 Am. Rep. 436), has been carried to lengths that would scarcely be followed elsewhere. On the other hand, the original rule in New York apparently was that breaking up the jury's deliberations did not effect an acquittal. People v. Green, 13 Wend. 55. Cullen, C. J., dissenting, in People ex rel. Stabile v. Warden, so announced, and nothing in the majority opinion suggests the opposite. Whatever the right doctrine, we will assume arguendo that the jury must not be interrupted, at least until they themselves wish to be discharged. [2] In the case at bar it appears to us that the defendant has not shown that they were so interrupted. We must concede that, had the bailiff merely discharged them at 9:30, this would have been proved; prima facie,

they have hope of agreeing till they say the contrary. Yet it was not a strain upon their request to read it as meaning that, if they could not agree in 15 minutes, they could not agree at all. Indeed, the probabilities are that this is what they did mean; else it is hard to see why they put a period to their further consultation. At best, we think that the defendant has failed affirmatively to prove that they were discharged before they themselves gave up, or even that they had not in substance announced that they did give up.

Coming next to the question of the judge's discretion, it is at least debatable whether, if exercised at all, it can be reviewed by writ of error. Winsor v. Queen, L. R. 1 Q. B. 289. But we may pass the point, because the period set of 8½ hours was so plainly long enough that no objection could be taken to it, and, indeed, none has been, as we understand it. What the defendant complains of is that the judge, by absenting himself at 4 o'clock, could not, and, indeed, never did, discharge them himself, but rigidly bound the clerk to do so when the time arrived, regardless of what might meanwhile happen. He thus cut himself off from revising his original decision, which, though perhaps proper enough when made, he might have seen fit to change later.

[3] That the judge was not justified in leaving the jury without means of communicating with him we entirely agree. He should have been always accessible to them, for the trial was still on. Nevertheless, he had in fact fixed the time for their discharge, reasonable in that he was under no duty to keep them out all night, and at most the defendant lost nothing but the chance that he might change his mind, and that further confinement might result in an acquittal. Such straws will not outweigh proven guilt, nor need we be to-day ridden by such nebulous possibilities. There must always be a compromise between the convenience of the jury and the protection of the accused, or we should revert to archaic barbarities, though now committed with an opposite purpose. While, therefore, we concede the possibility and the impropriety, we decline to make them an excuse.

[4] The next point requires little discussion. The only evidence to support the motion to quash was the defendant's affidavit on information and belief that the grand jury had no competent evidence upon which to indict him. If this were enough, we should be obliged to try over the proceedings before the grand jury in every case. If it turned out that there was competent evidence, the accused would none the less have the prosecution's case in advance to contrive against at his leisure. In any event the trial would be complicated to an inordinate extent, and our criminal procedure become even more unwieldy, dilatory, and uncertain. We agree with the rulings in the Eighth Circuit, never insensitive to the protection of personal rights. McKinney v. U. S., 199 F. 25; Murdick v. U. S., 15 F.(2d) 965. See, also, U. S. v. Morse (D. C.) 292 F. 273, 278; U. S. v. Reed, Fed. Cas. No. 16,134; U. S. v. Cobban (C. C.) 127 F. 713.

[5, 6] As to the third point, the indictment was for a scheme to defraud customers of their money by falsely saying that their shares would be kept for them. The allegation that thus they would be induced to pay interest on their debit balances was merely an incident. To confine the charge to that feature would have defeated the very plain intendment of the indictment as a whole. Finally, the judge was not called upon to characterize the evidence as direct or circumstantial. In the case relied on, People v. De Martini, 218 N. Y. 561, 112 N. E. 542, there had been an error in describing circumstantial evidence as direct, and that, too, upon a trial for murder.

Judgment affirmed.