## UNITED STATES v. BEADON et al.

No. 256.

Circuit Court of Appeals, Second Circuit.
April 20, 1931.

James W. Osborne, of New York City, for appellants Charles Beadon, Trend of the Market, Inc., and Stock Market Reporter, Inc.

Abraham Rosenthal, of New York City, for appellant Harry H. Phillips.

Michael Barnett, of Philadelphia, Pa., for appellant Utah Lead Co. of Delaware.

Robert E. Manley, Acting U. S. Atty., of New York City (Irving Spieler, Asst. U. S. Atty., of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal is from a judgment of conviction under an indictment for unlawfully using the United States mails in a scheme to defraud, in violation of section 215 of the

United States Criminal Code (18 USCA § 338), and for a conspiracy so to do, in violation of section 37 (18 USCA § 88). The indictment contained nine counts. The first eight counts charged unlawful use of the mails and the ninth count conspiracy. The court dismissed counts 1 and 8, and submitted to the jury for its consideration counts 2, 3, 4, 5, 6, 7, and 9.

The appellants Charles Beadon, Trend of the Market, Inc., and Stock Market Reporter, Inc., were convicted upon counts 2, 3, 4, 5, 6, 7, and 9; appellants Harry H. Phillips and Utah Lead Company of Delaware were convicted upon the ninth count.

It is sought to reverse the judgment because:

(1) The motion for a change of venue should have been granted.

(2) The court erred in holding that the defendants Utah Lead Company of Delaware, Trend of the Market, Inc., and Stock Market Reporter, Inc., were in court and were bound to plead to the indictment, and in ordering a plea of not guilty thereto to be entered for them.

(3) The court erred in recording the verdict and imposing the sentences on the report of the jury.

A motion for change of venue was made by the appellant Charles Beadon and denied by the trial judge.

There had been a prior trial which had resulted in the confession of a juror that he had been bribed by attorneys for the defendant in the case, and as a result three attorneys who were connected with that trial were indicted, tried, and convicted of bribery in the United States District Court for the Southern district of New York. Publicity had been given to these events by the newspapers, and there were many sensational articles dealing with the foregoing matters. The United States attorney, when summing up in the trial for bribery, had denounced the defendants in the case at bar. It is argued that it was impossible under such circumstances for the defendants herein to obtain a fair trial in New York, and that the denial of the motion for a change of venue was an abuse of discretion.

The only statutory provision regulating change of venue in criminal cases is section 53 of the Judicial Code (28 USCA § 114), and it affects only "districts containing more than one division," and provides that "all prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district."

It is evident from the foregoing that a judge of the Southern district of New York, which contains no subsections or divisions, had no power to transfer the cause to another district. But, even if the power had existed, the motion for change of venue was addressed to the discretion of the judge and that should not be disturbed except in the event of clear prejudice. Stroud v. United States, 251 U. S. 15, 40 S. Ct. 50, 64 L. Ed. 103. The trial judge in this case conducted an examination of the jurors on the voir dire with great circumspection. Of the jurors selected upon the second trial, ten stated that they had no knowledge of the newspaper reports about the prior litigation, and the remaining two showed upon their examination that they were entirely fit persons to serve. One of them, Van Vergler, said that he had read something about the case, but had formed no opinion, and that what he had read had made no impression which would interfere with his judgment after hearing the evidence. The other, a juror named Bondy, said that he had read some of the articles, but they had made no impression upon his mind as to the guilt or innocence of the defendants, and that he could render a verdict fair both to them and to the government. No objection was made or exception taken to the inclusion of these particular jurors in the panel.

The newspaper articles criticized and the remarks of the United States attorney were apparently all prior to the date of the second trial. We can find no error in proceeding with the trial before a jury such as was selected in the case at bar, and hold that, not only because of the limitations of section 53 of the Judicial Code (28 USCA § 114), but upon the merits, the objections to denying a motion for change of venue were properly overruled.

There seems to be no merit in the contention of the corporate defendants that they were not in court and that no valid verdict could be rendered against them for that reason. Judge Knox, who presided at the second trial, overruled their objections on the ground that the record showed that they had appeared by attorneys at the first trial before Judge Woolsey.

But it is argued that Judge Woolsey had held that defendants were in court upon the

erroneous theory that the presence of their officers Beadon and Barnett had subjected them to the jurisdiction. This, of course, would not be so, but the record shows that the corporate defendants were in court from the beginning because they had appeared generally by counsel. When the cause came on for trial before him on January 6, 1930, the record shows that there were the following appearances among others:

"Arthur N. Sager, Esq., Joseph Shalleck, Esq., and Edward H. Reynolds, Esq., for defendants Beadon, Morris, Rankin, Trend of the Market Inc., and Stock Market Reporter, Inc."

"Samuel A. Maginnis, Esq., for defendants Barnett and Utah Lead Company of Delaware."

When the trial proceeded on the next day, the following colloquy took place:

"Mr. Maginnis: In order to have the record straight, your Honor, nobody appears for the corporations of record.

"The Court: I thought Mr. Sager appeared for them yesterday, or Mr. Shalleck.

"Mr. Sager: No.

"Mr. Shalleck: No, not the Utah Lead Company. Mr. Maginnis.

"The Court: Do you appear for the Utah Lead Company?

"Mr. Maginnis: There has been no service on the Utah Lead Company and therefore as far as we know the Utah Lead Company is not in court. If the Utah Lead Company were in court, we would appear, and under the circumstances we do not feel we should make appearance.

"Mr. Spieler: There is no service necessary. Mr. Barnett is the president of that corporation and he is brought in here and that is all that was necessary.

"The Court: I do not think there should be a service on the corporation. You appear for them yourself, you are already in the case, Mr. Maginnis.

"Mr. Maginnis: I will then in that case.

"The Court: You appear for them do you?

"Mr. Maginnis: We put on the record an exception to the ruling.

"The Court: You appear for them?

"Mr. Maginnis: Yes.

"Mr. Spieler: Is he authorized, your Honor?

"The Court: Who appears for the other corporations?

"Mr. Spieler: Charles Beadon is president of the Stock Market Reporter.

"The Court: I rule both of them in the case.

"Mr. Sager: We appear for them and we take an exception to the ruling."

The foregoing extracts from the record before Judge Woolsey show that the attorneys were not seeking to raise the point that there had been no appearances for the corporate defendants on the prior day, but rather that those defendants had not been served with process. It is quite plain from the text that Sager and Shalleck substantially conceded their prior appearance for Trend of the Market, Inc., and Stock Market Reporter, Inc. Maginnis did not in terms deny that he had appeared for Utah Lead Company on the day before, but said: "There has been no service of the Utah Lead Company and therefore as far as we know the Utah Lead Company is not in court." Nor did Maginnis deny authority to appear. Indeed he said: "If the Utah Lead Company were in court, we would appear. * * *"

■ If the attorneys desired to correct the record or to withdraw their appearances, they should have done so. United States v. Curry, 6 How. at page 111, 12 L. Ed. 363; Rio Grande Irr., etc., Co. v. Gildersleeve, 174 U. S. 603, 19 S. Ct. 761, 43 L. Ed. 1103; Tilden v. Johnson, 6 Cush. (Mass.) 354; Daley v. Iselin, 212 Pa. 279, 61 A. 919. We have before us entries showing general appearances and no motion to strike out or withdraw them. Under these circumstances, Judge Knox properly held that the corporate defendants were in court and ordered pleas of not guilty entered when they stood mute. R. S. § 1032 (18 USCA § 564). The second group of objections must therefore fail.

■ The last error assigned is that the court erred in recording the verdict. The basis of this complaint is that the judge asked certain direct questions of the jurors when they came in to announce their verdict. The foreman stated that the jury had found the defendants Charles Beadon, Trend of the Market, and Stock Market Reporter guilty of conspiracy and of using the mails to defraud; the defendant Harry H. Phillips guilty of conspiracy; the defendant "Michael Barnett, president of the Utah Lead Company, guilty of conspiracy," and the defendant Joseph Morris not guilty. Inasmuch as the foreman made no pronouncement as to the defendant Utah Lead Company, the court

asked what disposition the jury made as to it. The foreman asked whether he should explain that matter, but the court shut him off and said: "I want a verdict one way or the other, unless you have disagreed as to the Utah Lead Company yourselves. It is a defendant here. A verdict of some kind should be rendered with respect to that company if you have agreed upon a verdict with respect to it." Juror No. 11 then volunteered the statement that one of the jurors was reluctant to bring in a verdict against the Utah Lead Company for fear it might implicate some of the directors, and said, "May I ask your Honor with respect to the directors," to which the judge replied, "No director or officer of the Utah Lead Company with the exception of Michael Barnett is indicted on this charge."

The court directed the jury to retire and return a verdict one way or the other with reference to the Utah Lead Company. It accordingly retired and, upon returning to the courtroom, the foreman stated that it found the Utah Lead Company guilty of conspiracy.

Thereupon the judge stated that he understood the verdict as the jury desired it to be recorded was that Charles Beadon, Trend of the Market, and Stock Market Reporter were guilty upon each count which had been submitted, and the foreman replied: "Yes, your Honor." The judge then started to ask about the verdict as to Harry H. Phillips, when juror No. 6 said: "We have, as I understand it, only two counts * * * conspiracy and mails to defraud." The judge said that there were six mail fraud counts submitted and again said to the jury: "Do you find Beadon and Stock Market Reporter and Trend of the Market guilty upon each of the mail fraud counts which are Counts 2, 3, 4, 5, 6, and 7 and 9." But Juror No. 6 continued: "We only considered two counts." Whereat the court replied: "Gentlemen you should consider them all. Either they are guilty or not guilty." Juror No. 6 then remarked: "We did consider them all, but we found them guilty on two counts." Juror No. 8 then interjected: "What he means is, guilty of conspiracy and the other defrauding the mails." The court again said: "There are six counts which charge defrauding the mails. Is the defendant Beadon, and Stock Market Reporter and the Trend of the Market guilty upon each of the mail fraud counts?" To which this Juror No. 6 said, "Yes," and the foreman said, "Yes." The court again asked: "As

to that you have agreed?" The foreman said: "Yes." But the court, out of caution, still queried: "What about juror No. 6?" To which juror No. 6 replied, "That is right," but again said: "We agreed on two counts. We considered eight counts but we agreed on two counts." The court then said: "Gentlemen, I think you had better go back." But juror No. 6 replied: "The first count conspiracy and the second count was conspiracy to defraud the mail." The court again said: "Gentlemen, there are six counts in this indictment which charge a scheme and artifice to defraud and the use of the mails in the execution of that scheme." The foreman replied: "Yes, your Honor." Thereupon the court again asked: "Now, I want to ascertain whether your verdict is that Beadon, Trend of the Market and Stock Market Reporter, are guilty upon each of those mail fraud counts of the indictment?" The foreman said: "Yes." The court again queried, "What about you Juror No. 6?" and juror No. 6 said, "Yes." The court then said, "Is that correct?" and juror No. 6 said, "Yes," and the court said, "You want that to be your verdict?" and the foreman replied, "That is correct." The court then asked: "Is it also your verdict that Beadon, Trend of the Market and Stock Market Reporter are guilty of the conspiracy count which is Count 9 of this indictment, is that correct?" The foreman answered: "Yes, your Honor."

The judge then proceeded to state his understanding about the verdict regarding Harry H. Phillips, Michael Barnett, and the Utah Lead Company, and the foreman said that each was found guilty on the conspiracy count.

After all this, the court directed a poll of the jury, and each juror confirmed the finding that Beadon, Trend of the Market, and Stock Market Reporter were guilty on all counts, and that Harry H. Phillips, Michael Barnett, and Utah Lead Company were guilty on the conspiracy count.

While we think it would have been better to send the jury out a second time with instructions to dispose of all counts, the court took great pains to ascertain the meaning of a verdict which was only rendered at first ambiguous by the remarks of juror No. 6. This was done not only by questions to juror No. 6, but by polling the whole jury. We can discover nothing in the record calculated to force a verdict unfavorable to any of the defendants. The effort of the judge was to make the verdict clear, and we are

satisfied from the colloquy that the verdict recorded represented the real finding of the jury. To ask questions to clarify a situation arising because of the remarks of the sixth juror was not error. Anderson v. United States (C. C. A.) 294 F. 593; Meyers v. United States (C. C. A.) 3 F.(2d) 379.

It is further argued that the verdict was not properly rendered because the foreman did not state that the defendants were guilty, but only replied "Yes" to questions by the court. But he had already stated what the jury found as to each defendant, and the questions of the court were only asked because of the confusion caused by the remarks of juror No. 6. The questions resulted in clarifying all ambiguities.

It is further contended that the trial judge instructed the jury that a crime had been committed and the defendants were connected with it. This seems to be based on his remarks about Rankin, a defendant, who had pleaded guilty.

In his charge the judge had said that Rankin's plea of guilty afforded no proof of the guilt of the other defendants, and added that he undoubtedly was an accomplice if all of the defendants were engaged in a fraudulent scheme, and said that "the testimony of any accomplice in a criminal case should be scrutinized with great care, and should be weighed carefully to see whether or not that person for some reason of his own, is seeking to fasten guilt upon some other persons for his own faults or for some other ulterior reason or purpose."

Thereafter Barnett excepted to that portion of the charge in which it had been stated, "That the * * * defendant Rankin was undoubtedly an accomplice if any agreement existed," and the court said, "If the jury believe from the facts that he was in the conspiracy that these other defendants were in, it should assume that he was an accomplice." It is quite manifest that this statement did not mean that the other defendants were in a conspiracy. The judge had previously defined conspiracy, had instructed the jury that each defendant was presumed to be innocent until proved guilty beyond a reasonable doubt, and that Rankin was an accomplice "if all of them were engaged in a fraudulent scheme." The statement that, if the jury found that Rankin was in the conspiracy "that these other defendants were in, it should assume that he was an accomplice," can only be taken to mean that, if Rankin and the others conspired together, Rankin was an accomplice.

It is also contended by one of the appellants that the court erred in not hearing evidence in support of the plea in abatement and the motion to quash because records of the Utah Lead Company subpœnaed before the grand jury were not used, and nothing but hearsay evidence could have been before it. It is enough to say that none of these objections is raised by proper assignments of error. But, aside from this, the indictment could not be successfully attacked on these grounds. Kastel v. United States (C. C. A.) 23 F.(2d) 156; United States v. Morse (D. C.) 292 F. 273; McKinney v. United States (C. C. A.) 199 F. 25.

The judgment of conviction is affirmed.