## UNITED STATES v. JONES.

District Court, S. D. New York.
Aug. 26, 1936.

Lamar Hardy, U. S. Atty., of New York City (Leo C. Fennelly, of New York City, of counsel), for the United States.

Hyman I. Fischbach, of New York City, and Harry O. Glasser, of Enid, Okl., for defendant.

LEIBELL, District Judge.

The government moves to strike out defendant's plea in abatement to an indictment charging him with the use of the mails in furtherance of a scheme to defraud. The gravamen of the fraud charged in the indictment filed May 8, 1936, is that the defendant represented in the sale of participation certificates in the J. Edward Jones Royalty Trust, Series D, and F to K, inclusive, that he would place "oil royalties" in the trust, and instead placed therein a substantial amount of "working interests" or "oil leases," of only speculative value.

Defendant's plea in abatement is interposed upon the ground "that there was no

competent legal evidence before the Grand Jury which returned the indictment herein, warranting and justifying the returning of said indictment."

There are pages of allegations and evidentiary matter in the plea, all for the purpose of showing that the evidence submitted to the grand jury was obtained illegally through a seizure by the Securities and Exchange Commission on January 5, 1935, of defendant's records without a search warrant, and through leads discovered in the evidence alleged to have been illegally seized. Defendant further sets forth in his plea a claim that certain evidence, acquired by the Commission through an examination of defendant's records at his office, was made available by defendant only on the condition that the Commission would not turn it over to any prosecuting authority. Defendant claims that the agreement was violated by the Commission. Photographic copies of the records of the defendant that were thus either illegally seized or conditionally disclosed are alleged to have been delivered voluntarily by the Commission to the United States attorney for the Southern District of New York and to have been used by him in procuring the indictment.

Defendant pleads that the entire proceeding before the Commission under its order of December 31, 1934, was illegal, that he was never informed of the nature and substance of any complaint pending against him, that the Commission's subpœna was null and void, and that his constitutional rights under the Fourth and Fifth Amendments were violated.

The plea in abatement contains eighteen subdivisions and covers sixteen typewritten pages. An order of the Securities and Exchange Commission, dated December 31, 1934—the contents of a subpœna duces tecum, dated December 26, 1934—pages of colloquy of the defendant, his counsel, and the Commission's attorney and examiner, are set forth verbatim in the plea.

The plea in abatement alleges that "the information which enabled the United States Attorney for the Southern District of New York to subpœna numerous persons as well as the so called victims of the defendant before the Grand Jury which returned this indictment, as well as to procure all other information which was used before the Grand Jury which returned this indictment was obtained from defendant's records so illegally seized and obtained."

Defendant's plea further alleges that between April 7, 1936, and May 8, 1936 (the date of the indictment), the grand jury received before it the United States attorney, agents and representatives of the Department of Justice and the Post Office Department, all of whom were then in actual physical possession of photographic copies of records of defendant acquired by them as aforesaid.

Defendant's contentions are summed up in the following sentence quoted from the seventeenth subdivision of his plea in abatement: "That the only evidence before said Grand Jury with regard to the alleged offenses contained in said indictment was the evidence contained in and derived from the records aforesaid, so unlawfully taken and seized as hereinbefore set forth."

By this allegation defendant attempts to bring his plea within the scope of the opinion of Judge Thomas in United States v. Goldman, 28 F.(2d) 424, 432 (D.C.Conn. 1928), where certain of the defendants in their pleas in abatement alleged that "the grand jury that found * * * the indictment * * * had not before it any evidence whatever that was competent or admissible." That allegation in the Goldman Case was held to plead "an issuable fact" which the demurrers admitted, and the court considered it "as an additional and sufficient ground for sustaining the plea." See, however, opinion of Judge Chase in United States v. McGuire (C.C.A. 1933) 64 F.(2d) 485, 492. But in the case at bar the government did not demur. The allegation relied upon in defendant's plea is not admitted; on the contrary, it is conclusively refuted.

The government moves, on notice of motion and supporting affidavit, to strike out the defendant's plea in abatement on the following grounds:

"1. That it does not state facts sufficient to constitute a Plea in Abatement;

"2. That it alleges on knowledge facts which the Court will take judicial notice the pleader cannot know, and fails to state the sources of information upon which the allegations are founded;

"3. That the plea is not well taken under the law as made and provided herein."

Annexed to the government's notice of motion is an affidavit of Leo C. Fennelly, the assistant United States attorney in charge of the case, who presented to the grand jury the evidence on which the in-

dictment was returned. He states that the evidence presented to the grand jury included the testimony of the defendant Jones, who "testified before the Grand Jury at his own request and refused to produce his books of account on the ground that they might incriminate him."

Mr. Fennelly further states in his affidavit that on August 28, 1935, Jones turned over to Jacob Grumet, Esq., an assistant United States attorney who was then in charge of this case, copies of the literature which had been used by Jones in distributing the J. Edward Jones royalty trust participation certificates. A copy of a letter from Jones to Grumet, dated August 28, 1935, is annexed to the Fennelly affidavit as Exhibit 1, and reads as follows:

"J. Edward Jones
"342 Madison Avenue
  "New York          28 August 1935
"J. Grumet, Esquire
"Room 529
"Old Post Office Building
"New York, N. Y.
  "Dear Mr. Grumet:
  "At your request, I forward herewith copies of literature which we have used in distribution among various of our clientele in the conduct of our business. These comprise all of the pieces of literature found by Dr. Scholz in a search of our files and I believe fairly represent the list of material used by us during the fifteen years of my business career. Some of these pieces, of course, were used only many years ago, but they are all forwarded in the hope that they will suffice in giving you a true conception of our representations. If any piece of literature is missing, I assure you it is not present because of our not now being in possession of a specimen of such.
  "Very respectfully yours,
    "[Signed]  J. Edward Jones."

The testimony of the defendant, Jones, before the grand jury at his own request and the literature he voluntarily sent to the district attorney in the letter of August 28, 1935, may have supplied the grand jurors with sufficient competent evidence on which to base the indictment. That evidence is not mentioned in the plea in abatement nor is it referred to in a replying affidavit (dated August 6, 1936) filed by the defendant on this motion.

In the course of the argument of this motion defendant's counsel stated: "Mr. Jones, contrary to the advice of his counsel, insisted upon having an opportunity to appear before the grand jury. He was granted that opportunity and I think testified before them for a period of five days."

Mr. Fennelly in his moving affidavit herein states that in investigating this case at the outset he examined the file of this court in a suit in equity, No. 79-333, brought by the Securities and Exchange Commission against Jones, in which the defendant consented on February 8, 1935, to a temporary injunction restraining him from, among other things, using the mails in furtherance of a scheme to defraud. Mr. Fennelly then states in his affidavit that "the file in the aforesaid case sets out a scheme to defraud similar to that alleged in the indictment herein and also contains the names of some of the victims alleged to have been defrauded by the defendant Jones." From Mr. Fennelly's affidavit it also appears that the principal sales agents of the defendant, Jones, testified before the grand jury as to the representations Jones authorized them to make in selling the participation trust certificates to the public.

Defendant's counsel asserts that the only way in which the government can attack defendant's plea in abatement is by demurrer, and that the United States attorney cannot on motion to strike out the plea submit any affidavit attacking the allegations in the plea. If that were true, then a defendant, by submitting a skillfully drawn but essentially false plea in abatement, might force the government to a preliminary trial of the evidence submitted to the grand jury, with all the prejudicial results that have been indicated by the courts in cases in this district and elsewhere. If the defendant pleads under oath that the only evidence submitted to a grand jury was illegal evidence, surely the government, without being forced to disclose all its evidence, may submit to the court on a motion to strike the plea an affidavit enumerating certain evidence presented to the grand jury that conclusively refutes the basic allegation of defendant's plea. That has been done in this case, and the court is thus informed that the grand jury had before it the testimony of the defendant himself, given at his own request, and certain sales literature of the defendant voluntarily submitted by him to the United States attorney. With those uncontroverted facts before the court the plea in abatement must **fail.**

■ At this point the following quotation from Judge Gilbert's opinion in Olmstead v. United States (C.C.A.9) 19 F.(2d) 842, 845, 53 A.L.R. 1472, seems appropriate: "While it is the rule in many jurisdictions that the court will not inquire into the sufficiency of the evidence before the grand jury, the decisions of the Supreme Court and those of most of the inferior federal courts have been to the effect that an indictment cannot be abated, on account of the admission of incompetent or hearsay testimony, unless it affirmatively appear in the plea that no competent evidence of the commission of the offense charged therein was presented to the grand jury, or unless all of the evidence was unlawfully procured in violation of substantial rights of the accused, so as to subject it to exclusion if offered against him. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann. Cas. 1138; Chadwick v. United States (C. C.A.) 141 F. 225; United States v. Standard Oil Co. (D.C.) 154 F. 728; Hillman v.. United States (C.C.A.) 192 F. 264; McKinney v. United States (C.C.A.) 199 F. 25; Anderson v. United States (C.C.A.) 273 F. 20; United States v. Morse (D.C.) 292 F. 273; United States v. Silverthorne (D.C.) 265 F. 859."

In United States v. Perlman (D.C.) 247 F. 158, 162, Judge Manton stated the rule as follows: "The law is well settled that an indictment is not vitiated by the fact that incompetent evidence was given before the grand jury, if there was any competent evidence upon which an indictment might have been found."

I am of the opinion that the grand jury had before it considerable evidence, untainted by any alleged illegality, on which to base the indictment herein.

■ I agree with the second point of the government's motion that the defendant could not possibly have direct knowledge of all the evidence submitted to the grand jury. Yet the defendant makes the unequivocal allegation, on his own knowledge, that the only evidence before the grand jury was contained in or derived from records of the defendant unlawfully seized. The proceedings of the grand jury are secret. He was in the grand jury room only while he was testifying as a witness at his own request, although he does not mention his appearance before the grand jury in his plea in abatement. Defendant does not state the source of the information on which he bases his sweeping con-

·clusion as to. the illegality of all the evidence before the grand jury. As was remarked in the Olmstead Case, supra: "The defendants could have had no personal knowledge of the evidence submitted to the grand jury."

In United States v. Siebrecht, 44 F.(2d) 824, 825 (D.C.E.D.N.Y.), Judge Galston dismissed a plea in abatement on a showing by affidavits submitted by the government that there was some competent evidence before the grand jury. The court, commenting on an affidavit submitted by one of the defendants in which the charge was made that the grand jury had before it no competent evidence of any kind, said: "A reading of the affidavit fails to show how that information was obtained. The court takes judicial notice that Mr. Kennedy could not have been present at any session of the grand jury, except possibly as a witness, and it does not appear that he was a witness."

The following quotation from Judge A. N. Hand's decision in United States v. Morse (D.C.) 292 F. 273, 277, on a motion to strike out a plea in abatement, is frequently found in reports of other cases and may well be repeated here: "Never to my knowledge has an indictment been held bad in this district because of insufficiency of evidence before the grand jury. If the latter body has been improperly constituted, or if fraud or misconduct is shown, a case may arise for examining the proceedings; but in my opinion nothing less is sufficient. U. S. v. Reed, Fed.Cas.No.16,134; United States v. Cobban (C.C.) 127 F. 713; United States v. Nevin (D.C.) 199 F. 831; McKinney v. United States, 199 F. 25, 117 C. C.A. 403. Indeed, it has, I think, generally been regarded in this district as impossible for a defendant to obtain an order for examination of the minutes, as may be done in the New York state courts. To raise the question by a motion to quash or a plea in abatement, rather than by a motion to examine the minutes, is a much more awkward practice than that employed in the state courts. The only objection to the state practice is the disclosure of the prosecutors' evidence, whereas the method sought here involves not only this disclosure, but in effect a double trial."

In the case of United States v. McGuire, 64 F.(2d) 485, 492 (C.C.A.2d, 1933), Judge Chase wrote as follows: "Without discussing what power the court has, should there be real reason to believe that improp-

er conduct has entered into the finding of an indictment, to inquire into the nature of the evidence before the grand jury, the assertion of the respondent that the evidence is insufficient will not avail. See Kastel v. United States (C.C.A.) 23 F.(2d) 156; Murdick v. United States (C.C.A.) 15 F. (2d) 965; McKinney v. United States (C. C.A.) 199 F. 25. The best evidence on this subject would have been the minutes of the grand jury. But they were not offered, and there is nothing to show that these respondents either knew what they contained or could have obtained them to offer in evidence. U. S. v. Violon (C.C.) 173 F. 501; U. S. v. Rubin (D.C.) 214 F. 507; U. S. v. Perlman (D.C.) 247 F. 158; U. S. v. Gouled (D.C.) 253 F. 242. Nor can it be thought that any different legal situation arises when the mere assertion that the evidence before the grand jury was insufficient takes the form of an offer to prove that conclusion in support of a plea in abatement. United States v. Morse .(D.C.) 292 F. 273, 277, 278."

The third point in the government's notice of motion "that the plea is not well taken under the law as made and provided herein" is sustained by the decisions recited in this opinion.

The government's motion to strike out the defendant's plea in abatement is granted.